**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 31, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BYRON SMITH,

     Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA;
ERIC HOLDER, United States
Attorney General, in his official
capacity; ALBERTO GONZALES,
former United States Attorney
General, in his individual capacity;
FEDERAL BUREAU OF PRISONS;
UNITED STATES PENITENTIARY,
LEAVENWORTH, KANSAS; and H.
LAPPIN, Director, Federal Bureau of
Prisons; EDDIE GALLEGOS, Acting
Warden; WILLIAM E. HOWELL, JR.,
Safety Manager, Federal Bureau of
Prisons; JOHN PARENT, Custodial
Maintenance Services Manager,
Federal Bureau of Prisons; TERESA
HARTFIELD, Education
Administrator/Principle, Federal
Bureau of Prisons; JEFFERY
SINCLAIR, Electric Shop Supervisor,
Federal Bureau of Prisons; JOHN
DOE, Education Staff Member,
Federal Bureau of Prisons; JANET
DURBIN, Education Staff Member,
Federal Bureau of Prisons;
STEPHANIE WHEELER, Safety
Officer, Federal Bureau of Prisons, in
their official and individual capacities,

     Defendants-Appellees.

No. 07-3242 & 08-3109

Daniel S. Volchok, (Judith E. Coleman, with him on the briefs), Wilmer Cutler Pickering Hale and Dorr, LLP, Washington, D.C., for Plaintiff-Appellant.[1]

Edward Himmelfarb, (Eric F. Melgren, United States Attorney; Andrea L. Taylor, Assistant United States Attorney, Kansas City, Kansas, on the appellees' brief; Marietta Parker, Acting United States Attorney, Kansas City, Kansas; Gregory G. Katsas, Assistant Attorney General; Barbara L. Herwig, Attorney, Appellate Staff, Civil Division, Washington, D.C., with him on the supplemental brief), Attorney, Appellate Staff, Civil Division, Washington, D.C., for Defendants-Appellees.

Before **BRISCOE, HOLLOWAY,** and **MURPHY**, Circuit Judges.

**BRISCOE**, Circuit Judge.

Plaintiff-Appellant Byron Smith brings claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*, and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) against Defendants-Appellees.  Defendants-Appellees are the United States, the Attorney

---

[1]  We must commend counsel and their firm for providing not only free legal service to the plaintiff in this case, but also providing such high caliber representation in briefing and at oral argument.

General of the United States,[2] the Federal Bureau of Prisons, the United States

Penitentiary at Leavenworth ("Leavenworth"), and various employees and

administrators at the Bureau of Prisons and Leavenworth (hereinafter collectively

referred to as "defendants"). Defendants filed a motion to dismiss Smith's

claims, which was granted by the district court, and Smith appeals that decision.

We have jurisdiction over this matter pursuant to 28 U.S.C. § 1291, and we

affirm in part, reverse in part, and remand for further proceedings. Regarding

Smith's FTCA claim, we affirm the district court because: first, an FTCA claim

can only be brought against the United States; and, second, the Supreme Court

has expressly held that an FTCA claim is precluded when the Inmate Accident

Compensation Act applies, as it does here.

Regarding Smith's <u>Bivens</u> claim against all defendants other than the

individual federal officials in their individual capacities, we affirm the district

court's dismissal because <u>Bivens</u> claims cannot be asserted directly against either

the United States or federal officials in their official capacities or against federal

agencies.

Regarding Smith's remaining <u>Bivens</u> claim against individual federal

---

[2] Because it is unclear whether the Attorney General of the United States is sued in his official or individual capacity, we construe Smith's complaint liberally to assert both an official-capacity and individual-capacity claim against the Attorney General of the United States. <u>See</u> <u>Reynoldson v. Shillinger</u>, 907 F.2d 124, 125 (10th Cir. 1990) (applying the principle that "pro se prisoner complaints must be construed liberally").

3

officials in their individual capacities, we reverse the district court in part and affirm in part because: first, the district court erred by finding that the Inmate Accident Compensation Act was the exclusive remedy precluding Smith's <u>Bivens</u> suit; and, second, the district court erred by finding that Smith's complaint failed to make allegations sufficient to state a claim for relief against the individually named federal officials in their individual capacities other than Alberto Gonzales and H. Lappin.

I

*A. Smith's Allegations*

Smith's complaint stems from allegations that he was exposed to asbestos in 2003 while an inmate at Leavenworth. During his incarceration in Leavenworth, Smith worked as an electrician for the prison's Custodial Maintenance Services. Smith received a work order from his supervisor, defendant Jeffery Sinclair, to install a new light fixture in a closet in the prison's education department. Smith and others who were assigned to perform the installation were given access to the locked closet by defendant Janet Durbin, a staff member in the education department.[3] The closet lacked any ventilation.

While Smith was installing the light fixture, a fellow inmate, Carlos

_____

[3] Defendant Teresa Hartfield, the education administrator and Durbin's apparent supervisor, had to approve of all work or changes within the education department.

4

Gonzalez, entered the closet and asked to borrow some tools from Smith. Smith refused, consistent with prison policy, and Gonzalez then requested tools from Durbin, who provided them to Gonzalez. Gonzalez, who had been instructed by prison staff to clean the closet, then began pulling insulation off of the pipes in the closet, thereby filling the air with dust. Smith alleges that this dust contained asbestos, and the dust irritated his eyes, nose, and throat, and caused him to begin coughing.[4] Durbin directed Gonzalez to wait until the light fixture was installed before continuing his work in the closet. The work crew suspended work until the dust settled.

The next day, Smith was given another work pass by Sinclair and he and the other members of the work crew returned to the closet to finish installing the light fixture. They were again given access to the closet by Durbin, and she again supervised their work. Gonzalez was allowed back into the closet while Smith and the others were working inside. Once inside, Gonzalez pulled insulation off pipes, releasing additional dust to which Smith was exposed. The dust again caused irritation to Smith, and the work crew again stopped working until the dust settled. Durbin directed Gonzalez to leave the closet, threatening to write a report on him if he did not comply. After the dust cleared, Smith and the crew

---

[4] Attachments to Smith's original complaint also include an allegation by Smith that he had "developed white circles" on his lungs. Aplt. App. Doc. 1 Exh. D1.

continued work on the fixture, but could not get the light to work. Durbin called Sinclair, and he arrived to assist. The job was then completed.

In 1994, a survey was performed by the Ramsey-Schilling Consulting Group, documenting the presence of asbestos in "Building # 116" at Leavenworth and stating that the pipe insulation in the second floor education southwest storage room was damaged. Smith alleges the closet where he was exposed to dust in 2003 is in the education department of "Building # 116," and specifically alleges that this southwest storage room is where he was exposed to asbestos. Smith contends that the pipe insulation that was disturbed by Gonzalez was not in good repair, and that due to the pipe insulation's damaged condition, asbestos was exposed to the air.

Smith alleged that the "safety [department at Leavenworth], CMS [Custodial Maintenance Services at Leavenworth] and the education department knew that asbestos was in the closet" due to the Ramsey-Schilling survey. Aplt. App. Doc. 1 Attach. 4 at ¶ 27. Smith also references the response to his administrative remedy request which implies that the warden at Leavenworth also knew of the asbestos as a result of the Ramsey-Schilling survey. Smith further alleges that he was never given any warning regarding the asbestos at any point. Smith claims that he suffers from a cough, shortness of breath, and trouble with his throat and eyes. Smith also alleges emotional distress.

6

*B. Procedural Posture*

Smith filed his initial pro se complaint in the United States District Court for the District of Columbia.[5] The case was then transferred to the United States District Court for the District of Kansas due to improper venue. Smith filed an amended complaint in the District of Kansas post-transfer, which incorporated by reference the original complaint's factual allegations. Smith's amended complaint alleges that defendants[6] were negligent and deliberately indifferent by exposing him to asbestos without protective measures. Smith seeks compensatory damages, punitive damages, and injunctive relief for future medical care. Id. Doc. 5 (Smith's "First Amended Complaint").

The district court granted defendants' motion to dismiss Smith's amended complaint for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and, alternatively, for failure to state a claim upon which relief could be granted, Fed.

---

[5] At the time he filed his complaint, Smith was incarcerated at the United States Penitentiary Hazelton in West Virginia.

[6] Specifically, defendants are: the United States government, the Attorney General, the Federal Bureau of Prisons, the United States Penitentiary at Leavenworth, H. Lappin (director of the Federal Bureau of Prisons), Eddie Gallegos (the former warden at Leavenworth), William Howell, Jr. (the safety department manager at Leavenworth), John Parent (the Custodial Maintenance Services manager at Leavenworth), Teresa Hartfield (the education administrator at Leavenworth), Jeffery Sinclair (the electrical shop supervisor at Leavenworth), John Doe (a member of the education staff at Leavenworth), Janet Durbin (a former member of the education staff at Leavenworth), and Stephanie Wheeler (a safety department member at Leavenworth). See Aplee. Br. at 5 nn.2–3; Aplt. App. Docket Sheet.

R. Civ. P. 12(b)(6). The district court concluded that the prisoners' workers' compensation statute, the Inmate Accident Compensation Act, 18 U.S.C. § 4126, was Smith's exclusive remedy for his alleged work-related injuries, foreclosing Smith's FTCA and <u>Bivens</u> claims. Aplt. App. Doc. 59 at 6. The district court alternatively found that Smith's FTCA claim could only be brought against the United States. The district court also held that Smith's FTCA claim against the United States failed because his allegations of harm did not constitute a physical injury. <u>Id.</u> at 8. His claim for lost medical records was also dismissed because Smith did not have a protected property interest in them. <u>Id.</u> at 6-8. The district court then alternatively found that Smith's <u>Bivens</u> claim failed because the amended complaint did not allege that defendants "knew he faced a substantial risk of harm and disregarded that risk." <u>Id.</u> at 8-9 (internal quotation omitted).

Smith filed a Rule 60(b) motion in which he asked the district court to reconsider its decision. The district court denied Smith's motion. Smith then filed a Rule 59(e) motion in which he asked the district court to alter or amend the judgment. The district court also denied that motion.

We are presented with two appeals. Case number 07-3242 is an appeal from the district court's dismissal of Smith's amended complaint, and case number 08-3109 is an appeal from the district court's denial of Smith's motion to alter or amend judgment under Rule 59(e). Smith did not file a notice of appeal regarding the district court's denial of his Rule 60(b) motion, but did

8

subsequently file an amended notice of appeal purporting to include in Case No. 08-3109 review of the denial of his Rule 60(b) motion. Smith's two appeals were consolidated, and counsel was appointed for Smith.[7]

## II

### A. Smith's Pro Se Status in the District Court

At the outset, it is important to note Smith's pro se status in the district court. "[A] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation omitted). In Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), we stated:

> We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

"This court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997). We have on several

---

[7] Smith filed repeated motions for the appointment of counsel in the district court, Aplt. App. Docs. 6-8, 47-49, 58, all of which were denied, id. Docs. 13, 59.

occasions dismissed pro se complaints for failure to allege sufficient facts. See

Hall, 935 F.2d at 1110 (citing cases).

*B. Appellate Jurisdiction*

We must first determine the scope of our appellate review in this case.

Certainly, we have jurisdiction to review Smith's appeal of the district court's

memorandum and order dismissing his amended complaint under Rule 12(b). See

28 U.S.C. § 1291 (granting jurisdiction to the courts of appeals over "appeals

from all final decisions of the district courts"); Moya v. Schollenbarger, 465 F.3d

444, 450 (10th Cir. 2006) (stating that when "a district court order expressly and

unambiguously dismisses a plaintiff's entire action, that order is final and

appealable"). We may review all of the arguments Smith raised before the district

court that pertain to that ruling. Pierce v. Shorty Small's of Branson Inc., 137

F.3d 1190, 1192 (10th Cir. 1998).

Smith also timely filed a notice of appeal with respect to the district court's

denial of his Rule 59(e) motion. As a result, we also have jurisdiction under 28

U.S.C. § 1291 to review the district court's denial of that Rule 59(e) motion.

However, there is some question whether we may also consider arguments

raised in support of Smith's Rule 60(b) motion. Smith filed his Rule 59(e)

motion based on his view that the district court had erroneously denied his Rule

60(b) motion. Aplt. App. Doc. 76. In his Rule 60(b) motion, Smith argued, for

the first time, that the Inmate Accident Compensation Act does not provide him a

10

true remedy because his benefits under that Act do not become ripe until Smith is near release from prison. Id. Doc. 66 at 5-7. Under the standard enunciated in Rule 60(b)(6), the district court denied Smith's Rule 60(b) motion after finding Smith had stated no "exceptional circumstances" to support granting the motion. Id. Doc. 75.

Smith did not file a separate appeal from the denial of his Rule 60(b) motion. However, he did file an amended notice of appeal, after he appealed the denial of his Rule 59(e) motion, stating that he was appealing the denial of both post-judgment motions. Id. Doc. 92. Smith's filings clearly put defendants on notice that he was appealing the district court's rulings on both motions. We stated in Independent Petroleum Ass'n of America v. Babbitt, 235 F.3d 588, 593 (10th Cir. 2001), that:

> Under Rule 3(c) [of the Federal Rules of Appellate Procedure], a notice of appeal must designate the judgment, order, or part thereof being appealed. Nevertheless, a party's failure to designate the proper order it intends to appeal is not necessarily fatal. As we have explained, a party may demonstrate its intention to appeal from one order despite referring only to a different order in its petition for review if the petitioner's intent can be fairly inferred from the petition or documents filed more or less contemporaneously with it. Furthermore, without a showing of prejudice by the appellee, technical errors in the notice of appeal are considered harmless.

(internal quotations and citations omitted). As a result, we will exercise jurisdiction over Smith's appeal from the denial of both the Rule 60(b) and Rule

11

59(e)[8] motions and consider the arguments raised in those motions in our merits review of Smith's claims.[9]

And finally, in the district court, Smith appeared to make a claim relating to his allegedly lost medical records. See Aplt. App. Doc. 5 ¶¶ 3-15 (portion of amended complaint setting out the alleged loss of Smith's medical records); Doc. 59 at 7-8 (portion of district court's memorandum and order dismissing any claim under the FTCA for Smith's loss of medical records). However, neither in his opening brief nor in subsequent briefing does Smith press any issue with respect

---

[8] An order denying a postjudgment motion is reviewed for an abuse of discretion. Jennings v. Rivers, 394 F.3d 850, 854 (10th Cir. 2005). A district court has substantial discretion to grant Rule 60(b) relief as justice requires, and "such relief is extraordinary and may only be granted in exceptional circumstances." Servants of Paraclete v. Does, 204 F.3d 1005, 1009 (10th Cir. 2000) (internal quotations omitted). However, a "district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Zurich N. Am. v. Matrix Serv., Inc., 426 F.3d 1281, 1289 (10th Cir. 2005) (internal quotation omitted). "And a Rule 59(e) motion is normally granted only to correct manifest errors of law or to present newly discovered evidence." Jennings, 394 F.3d at 854 (internal quotation omitted).
Because the ultimate determinations on the merits of Smith's claims are based on legal grounds and the correct application of the applicable legal standards, the standard of review is met regardless which appellate standard is used.

[9] Smith filed a "Request to Call for Affidavit" requesting the court to consider certain documents on appeal. Prior to consolidation of Smith's appeals, the government filed a response in opposition, arguing that we lacked jurisdiction over some of the matters in the appeal of the district court's memorandum and order. Because we have consolidated Smith's appeals, and have determined that we should consider the arguments made in support of both, we grant Smith's motion.

12

to his medical records.  As a result, we conclude Smith has not appealed the dismissal of his claims regarding lost medical records.  See Fed. R. App. P. 28(a)(9)(A) (requiring the appellant's opening brief to contain the contentions raised on appeal); Becker v. Kroll, 494 F.3d 904, 913 n.6 (10th Cir. 2007) (concluding that issues and arguments on which an appellant desires appellate review must be raised in the appellant's opening brief or be waived).

## C.  District Court's Memorandum and Order Dismissing Smith's Claims

### 1.  Standard of Review

A dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is reviewed de novo.  Trackwell v. United States, 472 F.3d 1242, 1243 (10th Cir. 2007).  A facial attack on the complaint's allegations regarding subject matter jurisdiction questions the complaint's sufficiency and requires the court to accept the allegations as true.  Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co., 428 F.3d 1285, 1292 (10th Cir. 2005).

The legal sufficiency of a complaint is a question of law, and a Rule 12(b)(6) dismissal is reviewed de novo.  Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006).  Again, for purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.  Id.  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is

13

legally sufficient to state a claim for which relief may be granted." Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (internal quotation omitted).

The Supreme Court recently retired "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957), abrogated by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007). The Court replaced the Conley standard with a new standard in Twombly, which "prescribed a new inquiry for [courts] to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Twombly, 127 S. Ct. at 1974). The Court explained that "a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Id. (internal citation and brackets omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Id.

In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, Indus. Constructors Corp. v.

14

U.S. Bureau of Reclamation, 15 F.3d 963, 964-65 (10th Cir. 1994), and documents incorporated into the complaint by reference, Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (2007); TMJ Implants, Inc. v. Aetna, Inc., 498 F.3d 1175, 1180 (10th Cir. 2007). "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotation omitted).

2. The Inmate Accident Compensation Act, 18 U.S.C. § 4126

The Inmate Accident Compensation Act, and the regulations promulgated thereunder, provide two types of compensation for a federal inmate who suffers a work-related injury or improper medical treatment of a work-related injury. The first type of compensation is available only when the inmate is ready to be released from prison and reenter the workforce. 28 C.F.R. §§ 301.101(a), 301.301-.319. If the inmate still suffers a residual physical impairment as a result of the work-related injury, then within forty-five days of his release date, he can submit a claim for compensation. Id. § 301.303(a). If, however, he has fully recovered from his injuries while incarcerated, he is not entitled to any compensation. Id. § 301.314(a). The second type of compensation is for wages the inmate actually loses while he is prevented from doing his work assignment due to his injury. Id. §§ 301.101(b), 301.201-.205.

15

## 3. FTCA Claim

The district court dismissed Smith's FTCA claim on two bases: first, that the FTCA claim is barred because "the cause of his alleged injuries [is] work-related and compensable only under 18 U.S.C. § 4126," Aplt. App. Doc. 59 at 6; and second, that an FTCA claim, which may only be brought against the United States, failed for lack of an alleged "significant physical injury," id. at 6-7.

As an initial matter, we, like the district court, note that Smith asserted his FTCA claim against all the named defendants. "The United States is the only proper defendant in an FTCA action." Oxendine v. Kaplan, 241 F.3d 1272, 1275 n.4 (10th Cir. 2001). Thus, the district court correctly dismissed Smith's FTCA claims against every defendant except the United States on the ground that those defendants were not proper parties.

We also note that the Supreme Court has long recognized the right of federal prisoners to recover damages against the United States under the FTCA for personal injuries sustained as the result of the negligence of a federal employee. See United States v. Muniz, 374 U.S. 150, 150 (1963) (holding that a person can sue under the FTCA "for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee"). But when a federal prisoner's injuries are work-related, the Supreme Court has held that the prisoner's exclusive remedy against the government is the Inmate Accident Compensation Act; he cannot sue the government under the

16

FTCA. United States v. Demko, 385 U.S. 149, 152-54 (1966). There is no dispute that Smith's alleged injuries are work-related.

Smith argues that the Inmate Accident Compensation Act should not be the exclusive remedy against the government for a prisoner like himself who has a very long sentence. He argues the Inmate Accident Compensation Act likely would afford him little, if any, relief because he might die before he is within forty-five days of his release date, which is when he could first apply for benefits under the Act. The Supreme Court in Demko considered the argument that the Inmate Accident Compensation Act is not comprehensive enough, and rejected it. Id. at 152. "Until Congress decides differently we accept the prison compensation law as an adequate substitute for a system of recovery by common-law torts." Id. at 153. Accordingly, the district court properly dismissed Smith's FTCA claim against the United States for any injuries incurred while working at Leavenworth.

### 4. Bivens Claim

As with the FTCA claim, Smith's Bivens claim was asserted against all defendants. However, a Bivens claim can be brought only against federal officials in their individual capacities. Bivens claims cannot be asserted directly against the United States, federal officials in their official capacities, Farmer v. Perrill, 275 F.3d 958, 963 (10th Cir. 2001), or federal agencies, F.D.I.C. v. Meyer, 510 U.S. 471, 485-86 (1994). As a result, the district court correctly

17

dismissed Smith's Bivens claims against all defendants except for his claims against the individual federal officials in their individual capacities.

Regarding the remaining Bivens defendants, however, the Supreme Court has held that a Bivens remedy may be available against federal prison officials for violations of the Eighth Amendment. See Carlson v. Green, 446 U.S. 14, 18 (1980) (stating that "Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court" in a case involving allegations of personal injuries from federal prison officials). Nonetheless, the individual defendants here argued that no Bivens remedy was available because the Inmate Accident Compensation Act constituted Smith's exclusive remedy for any injury resulting from his alleged asbestos exposure.[10] As support for this argument, defendants cited the Supreme Court's decision in Demko, 385 U.S. 149, our published decision in United States v. Gomez, 378 F.2d 938 (10th Cir. 1967) (per curiam), and our unpublished decision in Alvarez v. Gonzales, 155 F. App'x 393 (10th Cir. 2005). The district

---

[10] Defendants contended that whether a Bivens remedy was available to Smith was a matter of subject matter jurisdiction, and the district court apparently agreed. As we have previously stated, however, whether a court should imply a Bivens remedy is not a question of subject matter jurisdiction. Peoples v. CCA Det. Ctrs., 422 F.3d 1090, 1096 (10th Cir. 2005), vacated in part on other grounds on reh'g en banc, 449 F.3d 1097 (10th Cir. 2006). "In fact, there is no power to imply a Bivens cause of action unless a court has first satisfied itself that jurisdiction exists." Id. Thus, the district court had jurisdiction pursuant to 28 U.S.C. § 1331 to consider Smith's Eighth Amendment claims.

18

court, in turn, relied on these three cases in granting defendants' motion.

Neither <u>Demko</u> nor <u>Gomez</u> concerned a claim against individual federal officials, however. Rather, <u>Demko</u> addressed whether the Inmate Accident Compensation Act's administrative compensation scheme provided a federal prisoner's exclusive remedy against the United States for a work-related injury and thus barred suit against the government under the FTCA. <u>Demko</u>, 385 U.S. at 150. In ruling that the Inmate Accident Compensation Act did preempt a claim under the FTCA, the Court noted that workers' compensation statutes were historically "the offspring of a desire to give injured workers a quicker and more certain recovery than can be obtained from tort suits based on negligence and subject to common-law defenses to such suits [and therefore] compensation laws are practically always thought of as substitutes for, not supplements to, common law tort actions." <u>Id.</u> at 151. In contrast, the Court held in <u>Carlson</u> that it is "crystal clear that Congress views the FTCA and <u>Bivens</u> as parallel, complementary causes of action." <u>Carlson</u>, 446 U.S. at 20.

This court's two-paragraph per curiam decision in <u>Gomez</u> followed on the heels of <u>Demko</u> and set aside a judgment against the United States under the FTCA for a prisoner's work-related injuries. <u>Gomez</u>, 378 F.2d at 939. While <u>Gomez</u> did describe <u>Demko</u> as holding that "the compensation benefits provided by 18 U.S.C. § 4126 constitute the exclusive remedy for injuries received by federal prisoners while performing assigned prison tasks," <u>id.</u>, we must be careful

19

not to take this statement out of context. Both <u>Demko</u> and <u>Gomez</u> concerned only tort claims against the United States, and neither purported to consider whether the Inmate Accident Compensation Act also constituted an inmate's exclusive remedy for claims against an individual federal official who has allegedly violated the inmate's constitutional rights in connection with a work-related injury.

The Supreme Court in <u>Carlson</u>, in holding that the FTCA did not preclude the prisoner's <u>Bivens</u> claim, stated that a plaintiff's ability to pursue a <u>Bivens</u> claim is precluded in two specific instances:

> The first is when defendants demonstrate special factors counselling hesitation in the absence of affirmative action by Congress. The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a <u>substitute</u> for recovery directly under the Constitution and viewed as equally effective.

446 U.S. 18-19 (internal quotation and citations omitted). The <u>Carlson</u> Court supported its conclusion that Congress did not intend the FTCA to preclude a prisoner's <u>Bivens</u> claim by finding that a <u>Bivens</u> remedy was more effective than the FTCA remedy. <u>Id.</u> at 20-23. The <u>Carlson</u> Court noted the deterrent effect of the <u>Bivens</u> remedy because of the potential personal financial liability to federal officials, in addition to federal officials' potential exposure to the imposition of punitive damages. The Court also noted the availability of a jury trial under <u>Bivens</u>. <u>Id.</u> None of these rights or remedies are available under the FTCA.

20

In <u>Bivens</u> cases following <u>Carlson</u>, the Supreme Court has provided further explanation of the "special factors counselling hesitation in the absence of affirmative action by Congress" which limit judicial expansion of the <u>Bivens</u> remedy. The Supreme Court stated in <u>Bush v. Lucas</u>, 462 U.S. 367, 378 (1983), that "[w]hen Congress provides an alternative remedy, it may, of course, indicate its intent, by statutory language, by clear legislative history, or perhaps even by the statutory remedy itself, that the Court's power should not be exercised." And in <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 423 (1988), the Court noted that

> the concept of "special factors counselling hesitation in the absence of affirmative action by Congress" has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent. When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional <u>Bivens</u> remedies.

Despite the presence of <u>Demko</u>, <u>Carlson</u>, <u>Bush</u>, and <u>Schweiker</u>, this court has not yet considered whether the language of the Inmate Accident Compensation Act or its clear legislative history signal Congress' intent to preclude federal courts from recognizing a <u>Bivens</u> cause of action that arises out of a work-related injury.[11] We have not considered whether the design of the

---

[11] Defendants argue that we are creating a new <u>Bivens</u> remedy for deliberate indifference under the Eighth Amendment, citing <u>Wilkie v. Robbins</u>,

(continued...)

21

Inmate Accident Compensation Act provides what Congress would consider

adequate remedial mechanisms for constitutional violations, nor whether any

other special factors counsel hesitation in recognizing a <u>Bivens</u> cause of action in

these circumstances.[12]

Although we did conclude in <u>Alvarez</u> (an unpublished order, <u>see</u> <u>Duran-</u>

<u>Hernandez v. Ashcroft</u>, 348 F.3d 1158, 1162 n.3 (10th Cir. 2003) ("[U]npublished

decisions are not binding authority.")) that the plaintiff inmate was "barred from

litigating his <u>Bivens</u> claim [for failing to provide adequate medical treatment

following his injury] since the cause of his original injury was work-related and

compensable only under 18 U.S.C. § 4126," 155 F. App'x at 396, we relied on

<u>Demko</u> and <u>Gomez</u> for this conclusion.  As discussed above, however, <u>Demko</u> and

<u>Gomez</u> concerned only the exclusivity of the Inmate Accident Compensation Act

in connection with tort claims against the government itself; they did not address

---

[11](...continued)
127 S. Ct. 2588 (2007).  We disagree.  In <u>Wilkie</u>, the Supreme Court discussed
the two-step process for determining whether to recognize a <u>Bivens</u> remedy
(citing <u>Bush</u>), and ultimately declined to permit the <u>Bivens</u> remedy for a Fifth
Amendment retaliation claim against land ownership interests that had been
brought against Bureau of Land Management officials.  127 S. Ct. at 2598-2604.
The Court noted in <u>Wilkie</u>, however, that it had previously recognized a <u>Bivens</u>
claim for "an Eighth Amendment violation by prison officials" in <u>Carlson</u>.  <u>Id.</u> at
2597.

[12]  The Inmate Accident Compensation Act was amended in 1988, Pub. L.
No. 100-690, 102 Stat. 4412, and 2004, Pub. L. No. 108-271, 118 Stat. 814, post-
<u>Bivens</u> and post-<u>Carlson</u>, without any Congressional comment on the relationship
between that Act and <u>Bivens</u> claims.

constitutional claims against individual defendants. As a result, <u>Alvarez</u> is not persuasive authority.

The only circuit to have expressly analyzed the exclusivity of the Inmate Accident Compensation Act as it relates to <u>Bivens</u> claims, following the guidance of <u>Carlson</u>, <u>Bush</u>, and <u>Schweiker</u>, concluded that the Inmate Accident Compensation Act does <u>not</u> preclude a prisoner from bringing a <u>Bivens</u> claim. <u>Bagola v. Kindt</u>, 131 F.3d 632, 637-45 (7th Cir. 1994).[13] In <u>Bagola</u>, the plaintiff prisoner was injured while working at the federal prison, and alleged that prison officials were deliberately indifferent to his safety in violation of his Eighth Amendment rights. <u>Id.</u> at 633-34. The Seventh Circuit noted that the plaintiff prisoner was entitled to compensation under the Inmate Accident Compensation Act for lost-time wages, and that he could also apply for compensation for his injury within forty-five days of his release from prison. <u>Id.</u> at 634.

The Seventh Circuit then analyzed whether the <u>Bivens</u> remedy was also available to the plaintiff prisoner despite the availability of compensation under the Inmate Accident Compensation Act. Following the <u>Carlson</u> "dictates," the Seventh Circuit noted that: (1) the Inmate Accident Compensation Act "contains

---

[13] Additionally, but without in-depth analysis, the Ninth Circuit adopted the conclusion of the Seventh Circuit in <u>Bagola</u>. <u>Vaccaro v. Dobre</u>, 81 F.3d 854, 857 (9th Cir. 1996). The Ninth Circuit noted that "the theories as well as the defendants in [Inmate Accident Compensation Act] claims and in <u>Bivens</u> actions are different" and concluded that the Inmate Accident Compensation Act does not preclude a <u>Bivens</u> action against prison officials. <u>Id.</u>

no explicit congressional statement that a <u>Bivens</u> remedy should not be available to federal prisoners compensated under the statutory scheme;" and (2) "the deterrence factor, implicated by both [the imposition of] individual liability and the availability of punitive damages, and the availability of a jury trial weigh even more heavily in favor of allowing a <u>Bivens</u> claim" because if the Inmate Accident Compensation Act were an exclusive remedy as against <u>Bivens</u> claims, it "would not only insulate individual offenders from liability, but it would also effectively insulate their conduct from review in any trial-like forum." <u>Id.</u> at 639.

The Seventh Circuit then went on to analyze, under <u>Carlson</u>, <u>Bush</u>, and <u>Schweiker</u> whether any "special factors counsel hesitation in the absence of affirmative action by Congress." <u>Id.</u> at 639 (brackets and internal quotations omitted). The Seventh Circuit recognized that the plaintiff prisoner's "alleged constitutional injury [was] intertwined with his injury covered by the statutory benefits scheme," <u>id.</u> at 642, but concluded:

> Nonetheless, we believe that significant procedural distinctions exist between the remedies provided by § 4126 and the statutory remedies that have been found to preclude <u>Bivens</u> claims. These distinctions indicate that Congress does not consider § 4126 an adequate remedial mechanism to address Eighth Amendment violations, just as surely as it does not consider the FTCA an adequate mechanism to remedy non-work-related prisoner claims. Our analysis is guided by the deterrence factor identified in <u>Carlson</u>, as well as the recognized necessity to provide some forum for a prisoner's constitutional claims.

24

> In both Bush and Chilicky, it is significant that although the plaintiffs were denied a constitutional remedy, the statutory alternative provided a forum where the allegedly unconstitutional conduct would come to light.

Id. at 642-43 (internal citation omitted). The Seventh Circuit then held that § 4126 did not preclude a Bivens claim: the statutory scheme lacked requisite procedural safeguards for the prisoner's constitutional rights, the statute possessed very little deterrent value, and there was no explicit indication from Congress limiting the Bivens action by the Inmate Accident Compensation Act. Id. at 644-45.

We agree with the reasoning of the Seventh Circuit and adopt it as our own. In our view, the Inmate Accident Compensation Act does not preclude us from recognizing Smith's Bivens claim, for all the reasons stated by the court in Bagola. Unlike Demko, where the Inmate Accident Compensation Act was found to preclude an action under the FTCA, the Inmate Accident Compensation Act should not preclude a Bivens claim because a claim under the Inmate Accident Compensation Act would be a far different, less inclusive system of recovery than the Bivens action. Like Carlson, where the FTCA was not found to preclude an action under Bivens, our consideration of the factors relevant here also leads to the conclusion that the Bivens remedy is more effective than the Inmate Accident Compensation Act remedy. The Inmate Accident Compensation Act does not explicitly foreclose the Bivens remedy, there is very little deterrent effect for

25

constitutional harms within the Inmate Accident Compensation Act, and there is no alternative forum where the alleged constitutional violation could be addressed. We conclude that a <u>Bivens</u> action for constitutional harms arising from work-related asbestos exposure is not foreclosed by the compensatory remedy available under the Inmate Accident Compensation Act.

This does not, however, end our inquiry. The district court also dismissed Smith's <u>Bivens</u> claim on Rule 12(b)(6) grounds. Under Rule 12(b)(6), this court looks "to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." <u>Pace v. Swerdlow</u>, 519 F.3d 1067, 1073 (10th Cir. 2008) (internal quotations omitted). As stated above, <u>Twombly</u> asks us to determine whether Smith's allegations are "plausible." 127 S. Ct. at 1974. In <u>Robbins v. Oklahoma</u>, 519 F.3d 1242, 1247 (10th Cir. 2008), we stated:

> As best we understand it, however, the [<u>Twombly</u>] opinion seeks to find a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.
>
> The most difficult question in interpreting <u>Twombly</u> is what the Court means by "plausibility." . . . "[P]lausible" cannot mean "likely to be true." Rather, "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a

26

claim for relief.

(internal citations and quotations omitted); see also Bryson v. Gonzales, 534 F.3d 1282, 1286 (10th Cir. 2008) ("This is not to say that the factual allegations must themselves be plausible; after all, they are assumed to be true. It is just to say that relief must follow from the facts alleged.").

"[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context . . . ." Robbins, 519 F.3d at 1248; see also Bryson, 534 F.3d at 1286 (discussing required factual detail). But while "the plaintiff must provide 'more than labels and conclusions, or a formulaic recitation of the elements of a cause of action,'" Lane v. Simon, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting Twombly, 127 S. Ct. at 1965) (internal alteration omitted), "'specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests,'" id. (quoting Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007)) (internal alterations omitted). "Technical fact pleading is not required, but the complaint must still provide enough factual allegations for a court to infer potential victory." Bryson, 534 F.3d at 1286.

We therefore now turn to the merits of Smith's Eighth Amendment claim. In Robbins, addressing the sufficiency of the allegations in a complaint against multiple defendants, we stated that "complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility

because they typically include complex claims against multiple defendants." 519

F.3d at 1249. We continued:

> We reiterate that context matters in notice pleading.
> Fair notice under Rule 8(a)(2) depends on the type of
> case. In § 1983 cases, defendants often include the
> government agency and a number of government actors
> sued in their individual capacities. Therefore it is
> particularly important in such circumstances that the
> complaint make clear exactly *who* is alleged to have
> done *what* to *whom*, to provide each individual with fair
> notice as to the basis of the claims against him or her, as
> distinguished from collective allegations against the
> state.

Id. at 1249-50 (internal quotation and citations omitted). These same generalities

can be stated of complaints in Bivens cases.

To state an Eighth Amendment Bivens claim, Smith had to allege that each

defendant official[14] acted with deliberate indifference——that he or she both knew

of and disregarded an excessive risk to inmate health or safety. Farmer v.

Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts

---

[14] As noted above, a Bivens claim can be maintained only against federal officials in their individual capacities. Those defendants meeting this standard are: the Attorney General of the United States, H. Lappin (the director of the Federal Bureau of Prisons), Eddie Gallegos (the former warden at Leavenworth), William Howell, Jr. (the safety department manager at Leavenworth), John Parent (the Custodial Maintenance Services manager at Leavenworth), Teresa Hartfield (the education administrator at Leavenworth), Jeffery Sinclair (the electrical shop supervisor at Leavenworth), John Doe (a member of the education staff at Leavenworth), Janet Durbin (a former member of the education staff at Leavenworth), and Stephanie Wheeler (a safety department member at Leavenworth).

28

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

Although there is certainly no guarantee of ultimate success on the merits, we conclude that, for some of the federal officials named in their individual capacities, Smith has alleged sufficient facts to move his case beyond defendants' Rule 12(b)(6) dismissal motion. Smith alleges that the 1994 Ramsey-Schilling survey documented the presence of asbestos in the storage closet where he was exposed to asbestos. Smith specifically alleges that because of the 1994 Ramsey-Schilling survey, all individual defendants at Leavenworth knew that asbestos was present in the closet. Aplt. App. Doc. 1, Claims for Relief ¶ 1. Although this allegation is not technically specific, it certainly implies that defendants Eddie Gallegos (the former warden at Leavenworth) and William Howell, Jr. (the safety department manager at Leavenworth), both apparently upper-level administrators at Leavenworth, knew about the asbestos in the education department closet. Smith does not, however, make any individual allegations against the Attorney General of the United States or H. Lappin (the director of the Federal Bureau of Prisons) regarding their knowledge of the 1994 Ramsey-Schilling survey.

Smith also alleges that defendant Stephanie Wheeler, a member of the safety department, had previously directed Gonzalez's activities with respect to removal of the asbestos material, id. Attach. IV ¶¶ 34-35, and that defendant Teresa Hartfield had to approve of all work done in the education department, id.

29

Statement of Claim ¶ 4, which implies that Hartfield had to have known of the prior asbestos-related work. Smith alleges that John Parent told him he had previously informed the education department staff about the presence of asbestos in the closet, id. Attach IV ¶ 33, which would have included defendants Hartfield, Durbin, and John Doe. And, Smith alleges that defendant Durbin was aware of the damaged pipe insulation at the time of Smith's exposure. Id. Attach. IV ¶¶ 5-10. Moreover, defendant Jeffery Sinclair is alleged to have given Smith a work pass on the second day so that he could return to the closet and finish the job that could not be finished the first day because of the dust exposure, id. Attach. IV ¶ 10, which implies Sinclair's knowledge.

As the litigation progresses, it is possible the government will produce evidence showing that some or all of the individual defendants did not know that the 1994 Ramsey-Schilling survey disclosed the presence of asbestos in the closet, or more generally, that an individual defendant did not know of the presence of asbestos in the closet, based on simple lack of knowledge or intervening circumstances. However, these are matters to be determined at a later point in this case. Smith has satisfied the standard enunciated in Robbins––the defendants are on fair notice of who is alleged to have done what to whom, Robbins, 519 F.3d at 1249—as to all defendants named in their individual capacities other than Alberto Gonzales and H. Lappin (the director of the Federal Bureau of Prisons).

30

As Smith's allegations are legally sufficient to state a claim for relief, the district court erred in granting defendants Eddie Gallegos (the former warden at Leavenworth), William Howell, Jr. (the safety department manager at Leavenworth), John Parent (the Custodial Maintenance Services manager at Leavenworth), Teresa Hartfield (the education administrator at Leavenworth), Jeffery Sinclair (the electrical shop supervisor at Leavenworth), John Doe (a member of the education staff at Leavenworth), Janet Durbin (a former member of the education staff at Leavenworth), and Stephanie Wheeler's (a safety department member at Leavenworth) Rule 12(b)(6) motion.

### III

We AFFIRM the district court's dismissal of Smith's FTCA claim against all defendants. We AFFIRM the district court's dismissal of Smith's <u>Bivens</u> claim against the United States, federal officials in their official capacities, and federal agency defendants. We also AFFIRM the district court's dismissal of Smith's <u>Bivens</u> claim against Alberto Gonzales and H. Lappin. We REVERSE the district court's dismissal of Smith's <u>Bivens</u> claim against all individual defendants who are sued in their individual capacities other than Alberto Gonzales and H. Lappin, and REMAND for further proceedings on that claim. We GRANT Smith's "Request to Call for Affidavit," in which he requests that we review certain documents he had filed in the district court proceedings.

31