**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 29, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

WILLIAM D. JENKINS, JR.; TOBIE
JENKINS,

      Plaintiffs - Appellants,

v.

COREY CHANCE; MICHAEL
HEIDINGER; ATTILA DENES;
NICHOLAS ARNONE; DOUGLAS
COUNTY SHERIFF'S OFFICE,

      Defendants - Appellees.

No. 18-1216
(D.C. No. 1:17-CV-02761-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.
_____

      Williams D. Jenkins, Jr. and Tobie Jenkins brought a pro se civil action under

42 U.S.C. § 1983 arising out of the death of their twenty-three-year-old son, Jayson.

They alleged one of the defendants fired a taser at Jayson, which caused Jayson to

pull the trigger of a rifle he was pointing at his head, resulting in Jayson's death.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court[1] dismissed the complaint because it was time-barred by the applicable statute of limitations. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. Factual background[2]

In the early morning hours of February 3, 2015, Jayson discussed suicide with a friend before traveling to a nearby park in Highlands Ranch, Colorado, where he sat in a tree grove. While there, he fired a pistol into the ground. Defendants Corey Chance, Michael Heidinger, Attila Denes, and Nicholas Arnone, deputies with the Douglas County Sheriff's Department, responded to a report of shots fired. Deputy Chance found Jayson sitting with a rifle between his legs and talking to his mother on the telephone. Deputy Chance approached Jayson with his gun drawn and ordered Jayson to put the rifle down. Jayson asked Deputy Chance to move back, explaining that he was trying to talk to his mother. Deputy Chance told Jayson he could talk to his mother shortly and suggested Jayson could first talk to him. According to Deputy Chance, Jayson at one point said he was not going to shoot Deputy Chance or point the rifle toward him, so Deputy Chance switched from his gun to his Taser.

---

[1] With the consent of the parties, this case was assigned for decision to Magistrate Judge Scott T. Varholak, as permitted by 28 U.S.C. § 636(c)(1).

[2] Because this appeal involves a Rule 12(b)(6) dismissal, we draw the facts from the allegations in the complaint and exhibits submitted with it. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits . . . .").

At least once during this encounter, Jayson placed the rifle's muzzle in or near his mouth with his thumb on the trigger. Despite this, the complaint alleges, Deputy Chance never meaningfully attempted to deescalate the situation or radio that defendants were dealing with a potential suicide; he instead continued to pressure Jayson. While Jayson's thumb was on the trigger and the muzzle was near his mouth, Deputy Chance fired his Taser, the prongs of which struck Jayson's leg and shoulder. The rifle and Taser went off "basically at the same time." Doc. 5-1 at ¶ u.[3] Jayson died at the scene.

The next day, forensic pathology consultant Dr. Michael Burson performed an autopsy and issued a report. In the report, Dr. Burson noted Jayson's alleged history of "suicidal ideations and attempts" and a "thermal injury" on his leg, but he concluded the manner of death was suicide and listed the cause of death as a "self-inflicted gunshot wound of the head." Doc. 5-16, subfolder 16-ATT-FR1 1st Inv Rqst-Report, 16-ATT-FR1-2(B), AUTOPSY REPORT, at 4, 5, 7.[4] On

---

[3] The Jenkinses submitted numerous exhibits with their complaint in digital form on a thumb drive, which was assigned docket number 5. The digital files are organized in folders numbered 01 through 23 and another called "MISC," some of which have subfolders. Where the top-level folder contains only one document in .pdf format, we identify the document by referring to the docket number (5) followed by the folder number (omitting the zero for folders 1–9); e.g., "Doc. 5-1" refers to the single .pdf file in folder 1. Folder 1 contains an identical document in both .pdf and Microsoft Word formats; we cite to the .pdf version. Where a folder contains subfolders or two or more documents, we add additional identifying information derived from the documents or subfolders themselves.

[4] We cite to the .pdf page numbers of this document, which presents the pages of the report out of order.

February 19, 2015, the Douglas County Coroner completed a report reaching the same conclusions about the cause and manner of death.

On October 21, 2015, the Jenkinses submitted a "Request for Further Investigation and Information" to the Coroner and Dr. Burson. *Id.*, 16-ATT-FR1-1 REQUEST FOR FURTHER INVESTIGATION, at 1 (Request) (some capitalization omitted). Among other things, they asked the Coroner to reopen the investigation and both the Coroner and Dr. Burson to amend the cause of death "if there is doubt as to whether or not the Taser X2 had a part in the firing of the rifle." *Id.* at 22 (some capitalization omitted). They also asked for reconsideration of references to Jayson's suicidal history, claiming there was no evidence of such a history. The Jenkinses supported their Request with extensive evidence, some of which they quoted at length, including the Taser's product manual and video-recorded interviews of all four individual defendants. On February 3, 2016, the Jenkinses filed an Addendum to the Request.

On some unknown date in 2016, Dr. Burson issued an amended autopsy report, retaining his conclusion that the cause of death was a self-inflicted gunshot wound to the head but removing the references to Jayson's suicidal history and changing the manner of death from suicide to "undetermined." Doc. 5-4-ATT-AR AUTOPSY REPORT at 2 (Amended Autopsy Report). Dr. Burson opined that "there remain questions as to the precise timing of events which [led] up to the firing of the weapon," including whether use of the Taser "contributed to the firing of the weapon." *Id.* Dr. Burson deferred the final determination of the manner of death to

4

the Coroner. The Jenkinses did not receive the Amended Autopsy Report until January 10, 2017.

Meanwhile, on February 9, 2016, after considering the Jenkinses' evidence in detail, the Coroner concluded the manner of death remained suicide. She noted that, although the Taser may have contacted Jayson's leg, she could not determine the probability that it did, and she suggested the Taser did not make complete contact because that would have precluded reflex ability, rendering Jayson unable to pull the trigger. *See* Doc. 5-6-ATT-CM Coroner's Memo P-1 through P-3.

## B. District court proceedings

The Jenkinses filed their § 1983 action on November 17, 2017, asserting violations of the Second, Fourth, Fifth, and Eighth Amendments. Defendants filed a Rule 12(b)(6) motion to dismiss based on several grounds, including statute of limitations. The magistrate judge granted the motion, reasoning that the applicable two-year statute of limitations began to run no later than October 21, 2015, when the Jenkinses submitted the Request. The Jenkinses' cause of action accrued at that point, he said, because the Request made clear they "knew of the facts necessary to sue and recover damages arising out of Jayson's death." R. at 84. The magistrate judge rejected the argument that the claims did not accrue until the Jenkinses received Dr. Burson's Amended Autopsy Report on January 10, 2017, because the report "merely gave potential support to [their] previously-held belief that Jayson did not commit suicide" and did "not change the fact that [their] theory of the cause of Jayson's death was well known to them by at least October 21, 2015." *Id.* at 85.

5

Because the Jenkinses filed their complaint more than two years later, their claims were time-barred.

The magistrate judge also rejected the Jenkinses' reliance on equitable tolling, concluding they had not shown any of the defendants "wrongfully impeded them from filing [their] lawsuit or that truly extraordinary circumstances prevented them from filing their claims despite diligent efforts." *Id.* at 89. The Amended Autopsy Report, he said, "at most leant minimal support to Plaintiffs' already-held belief that Jayson did not commit suicide," *id.* at 88, and he concluded there was no evidence the Coroner, who was not a defendant in the case, was part of a cover up.

The magistrate judge did not reach the other grounds for dismissal defendants advanced in their motion. This appeal followed.

## II. DISCUSSION

### A. Standard of review

"We review de novo the dismissal of an action under Rule 12(b)(6) based on the statute of limitations." *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010). Under this standard, we "accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party." *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998). "We review the district court's refusal to apply equitable tolling for an abuse of discretion." *Braxton*, 614 F.3d at 1159 (internal quotation marks omitted). Because the Jenkinses are proceeding pro se, we liberally construe their filings. *See id.*

6

**B.    Analysis**

**1.  Statute of limitations**

"The Reconstruction Civil Rights Acts do not contain a specific statute of limitations governing § 1983 actions . . . ." *Wilson v. Garcia*, 471 U.S. 261, 266 (1985) (superseded by 28 U.S.C. § 1658 on unrelated grounds). "Because '§ 1983 claims are best characterized as personal injury actions,'" the Supreme Court has "held that a [forum] State's personal injury statute of limitations should be applied to all § 1983 claims." *Owens v. Okure*, 488 U.S. 235, 240–41 (1989) (quoting *Wilson*, 471 U.S. at 280). "[W]here state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Id.* at 249–50.

"Colorado has multiple personal injury statutes of limitations.  In Colorado, the residual statute of limitations for all actions, including personal injury actions, provides a two-year limitations period." *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993) (citations omitted); *see* Colo. Rev. Stat. § 13-80-102(1)(i) (providing a two-year statute of limitations for "[a]ll other actions of every kind for which no other period of limitation is provided").  We apply that limitations period to § 1983 claims. *See Blake*, 997 F.2d at 750–51 (finding § 1983 claims barred under § 13-80-102(1)(i); *see also Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) ("We have made clear that the statute of limitations for § 1983 actions brought in Colorado is two years from the time the cause of action accrued.").

Despite this long-held line of precedent, the Jenkinses raise several challenges to the application of a two-year limitations period to their claims: (1) it violates equal protection because the residual limitations period is longer in other states; (2) the states should not be able to restrict when § 1983 claims can be filed because states are the very entities § 1983 is supposed to control; (3) federal courts lack power to dismiss due solely to an arbitrary state limitations period; (4) § 1983 litigants have no notice that a state limitations period applies; and (5) Colorado's three-year statute of limitations "for fraud, misrepresentation, concealment, or deceit," Colo. Rev. Stat. § 13-80-101(1)(c), should apply because in their complaint the Jenkinses referred to misrepresentation, concealment, and deceit. But they raised none of these arguments in the district court, and none involves subject-matter jurisdiction or sovereign immunity. Nor have they advanced any argument in this court for plain-error review. Accordingly, they have failed to preserve these challenges for our review. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court."); *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992) ("As a general rule we refuse to consider arguments raised for the first time on appeal unless sovereign immunity or jurisdiction is in question.").

### 2. Accrual

Although state law governs the length of the limitations period for filing a § 1983 claim, federal law determines the accrual of a federal cause of action.

8

*Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004). The Jenkinses'

reliance on Colorado accrual authority is, therefore, inapposite.

We agree with the magistrate judge: the Jenkinses' § 1983 claims accrued no

later than October 21, 2015, when they submitted the Request for further

investigation to Dr. Burson and the Coroner. "[U]nder the federal discovery rule,

claims accrue and the statute of limitations begins to run when the plaintiff knows or

has reason to know of the existence and cause of the injury which is the basis of his

action." *Alexander*, 382 F.3d at 1215 (brackets and internal quotation marks

omitted). "In particular, a civil rights action accrues when facts that would support a

cause of action are or should be apparent." *Id.* (brackets and internal quotation marks

omitted). But "a plaintiff need not have conclusive evidence of the cause of an injury

in order to trigger the statute of limitations." *Id.* at 1216. We instead "focus on

whether the plaintiff knew of facts that would put a reasonable person on notice that

wrongful conduct caused the harm." *Id.*

The Request indisputably shows the Jenkinses had sufficient factual

knowledge to file § 1983 claims against all five defendants no later than October 21,

2015. In the Request, they cited scholarly works explaining that electrical burns

result in skin injury at the "points of contact to the electrical source," and that

exposure to a temperature of "65°C for two seconds" is "sufficient to produce burns."

Request at 6–7 (emphasis and internal quotation marks omitted). They asserted

"[t]he Taser prongs undoubtedly arched [sic] for the full five seconds preprogrammed

into the Taser-X-2 as recalled by Deputy Arnone and Deputy Heidinger on the

9

interview videos." *Id.* at 6 (some capitalization omitted).  They then posited the thermal burn to Jayson's leg could have occurred if a taser prong or the electricity arcing from it to Jayson's skin reached 65°C.

Turning to the Taser manual, the Jenkinses noted the Taser Deputy Chance used was capable of two shots and suggested that if it had no effect on Jayson as Deputy Chance alleged, he would have fired a second shot.  They also provided a Taser log reflecting Deputy Chance's deployment of the Taser's second shot "each and every time within a second of the first except on the day he deployed the Taser on [Jayson.]" *Id.* at 21 (some capitalization omitted).  They concluded that if Deputy Chance had deployed the Taser while Jayson "had the rifle in his mouth and the rifle fired, then there would be no need for the second set of prongs to be deployed," firing the Taser while Jayson had the gun in his mouth was "at a minimum reckless," and "such use of the Taser X2 would be in violation of the Douglas County Sheriff's Office['s]" policies.  *Id.* (some capitalization omitted).  They asserted they were "unclear" if Deputy Chance had "been trained in the use of the Taser X-2 per [the manufacturer's] instructions." *Id.* at 8 (some capitalization omitted).

The Jenkinses next quoted portions of the manual explaining the Taser X-2's electrical pulses "are designed to affect the sensory and motor functions of the peripheral nervous system and cause involuntary muscle contractions," *id.* at 8–9 (emphasis and internal quotation marks omitted), and are able "to cause involuntary stimulation of both [the] sensory nerves and the motor nerves," *id.* at 9 (emphasis and internal quotation marks omitted).  Significantly, they interpreted this functionality to

10

mean "the Taser X2 *could have inadvertently caused* [Jayson] to push the trigger." *Id.* (emphasis added).

The Jenkinses also discussed the manual's explanation that "[e]lectricity must be able to flow between the probes or the electrodes to deliver an electrical charge and will generally follow the path of least resistance." *Id.* at 9 (emphasis and internal quotation marks omitted). They then claimed it was "undeniable that the electricity flowed between the probes attached to [Jayson]," and "[t]he facts in this case indicate that the path of least resistance was undoubtedly [Jayson's] body." *Id.* (capitalization, emphasis, and internal quotation marks omitted). They further quoted the manual's statement that "[e]lectricity can arc through most clothing, and even some bullet-resistant materials," which they read as making "perfectly clear that [Jayson's] clothing was not an obstacle to the electricity being emitted from the Taser" because Jayson was not wearing anything "bullet-resistant." *Id.* (some capitalization, emphasis, and internal quotation marks omitted).

The Jenkinses then quoted from interview statements by Deputies Arnone, Heidinger, and Chance that they heard the Taser arcing. They also cited one Deputy's statement that he saw the prongs make contact with Jayson's leg and "the shoulder area of the pretty thick puffy jacket the kid had on," *id.* at 12; and Deputy Chance's statement that he "saw one good Taser probe in his leg the other one came up and got him in the arm but must not have made contact [because of] . . . the baggy clothes," *id.* at 20 (emphasis and internal quotation marks omitted).

11

Regarding the timing of the Taser and rifle shots, they quoted Deputies Arnone and Heidinger as saying the two shots were "kind of simultaneous," *id.* at 15 (emphasis and internal quotation marks omitted), and "basically at the same time," *id.* at 17 (emphasis and internal quotation marks omitted).

All of these observations, allegations, and assertions clearly demark the critical tipping point: as of the date they filed their Request, October 21, 2015, the Jenkinses "knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm." *Alexander*, 382 F.3d at 1216. A complaint filed on November 17, 2017, more than two years after their cause of action accrued, is barred by Colo. Rev. Stat. § 13-80-102(1)(i)'s two-year statute of limitations.

The Jenkinses, however, insist that their cause of action did not accrue until February 3, 2016, when they allegedly completed their investigation and submitted the Addendum to their Request, or until even later, when they finally received Dr. Burson's Amended Autopsy Report on January 10, 2017. But nothing in the Addendum shows they had insufficient factual knowledge on October 21, 2015—it generally reiterates what the Jenkinses asserted in their initial Request by reference to a different document from the Taser manufacturer. *See generally* Doc. 5-17, 17-ATT-SR2 2nd Inv Rqst-Report. And in relevant part, the Amended Autopsy Report simply changed the manner of death from "suicide" to "undetermined," leaving the final determination to the Coroner. Amended Autopsy Report at 2. That "fact" was not necessary for the Jenkinses to file their complaint. *See Alexander*, 382 F.3d at 1216 ("[A] plaintiff need not have conclusive evidence of the cause of an

12

injury in order to trigger the statute of limitations."). In short, the Jenkinses' arguments do not persuade us that their § 1983 cause of action accrued any later than October 21, 2015.

### 3. Equitable tolling

State law governs equitable tolling in a § 1983 action. *Id.* at 1217. Under Colorado law, "equitable tolling of a statute of limitations is limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 149 (Colo. 2007) (en banc) (internal quotation marks omitted). Neither condition exists here. The Jenkinses argue that the Coroner maliciously withheld Dr. Burson's Amended Autopsy Report as part of a cover-up, but as we just concluded, nothing in the Amended Autopsy Report was necessary for them to file suit. Any alleged withholding, therefore, did not impede their ability to do so. The Jenkinses complain "they are being prejudiced for exercising due diligence and for not engaging [judicial] resources until [they] knew the Defendants' actions or lack of actions contributed [to] or caused [Jayson's] death." Aplt. Reply Br. at 5. We are sympathetic to their effort to avoid filing a lawsuit until they were "fully convinced" they had cause of action. *Id.* at 4 (emphasis omitted). But again, "conclusive evidence of the cause of an injury" is not necessary to trigger a limitations period. *Alexander*, 382 F.3d at 1216. We therefore see no abuse of discretion in the magistrate judge's refusal to apply equitable tolling.

13

### III. CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court

Terrence L. O'Brien
Circuit Judge