RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0111p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

STEPHEN TED KOPROWSKI,

        *Plaintiff-Appellant,*

    *v.*

KAREN BENNETT BAKER; JORGE VAZQUEZ-VELAZQUEZ; RICHARD R. RAMIREZ; RHONDA JONES; ERIC D. WILSON; MARK MCHARGUE,

        *Defendants-Appellees.*

No. 14-5451

_____

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 6:11-cv-00183—Gregory F. Van Tatenhove, District Judge.

Argued: January 26, 2016

Decided and Filed: May 11, 2016

Before: COLE, Chief Judge; GILMAN and SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Jeffrey M. Harris, BANCROFT PLLC, Washington, D.C., for Appellant. Weili J. Shaw, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Jeffrey M. Harris, Paul D. Clement, BANCROFT PLLC, Washington, D.C., for Appellant. Weili J. Shaw, Mark B. Stern, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Charles P. Wisdom, Jr., Tiffany Fleming, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee. Stephen Ted Koprowski, Knoxville, Tennessee, pro se.

       COLE, C.J., delivered the opinion of the court in which GILMAN, J., joined. SUTTON, J. (pp 19–30), delivered a separate dissenting opinion.

_____

**OPINION**

_____

COLE, Chief Judge.  Plaintiff-Appellant Stephen Koprowski is a former federal prisoner who was housed at Fort McCreary in Pine Knot, Kentucky.  While imprisoned on November 23, 2009, Koprowski severely injured his back when he fell off a ladder while working in the food-service area of the prison.  Koprowski alleges that various prison staff members were deliberately indifferent to his serious medical needs in the wake of this injury.  He sued these individuals under the doctrine of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for, among other things, violating his Eighth Amendment rights.  The district court dismissed the claim on the ground that the Inmate Accident Compensation Act ("IACA"), 18 U.S.C. § 4126(c), a workers' compensation scheme that covers federal prisoners injured during the course of their prison employment, is the exclusive means by which federal prisoners may receive monetary compensation for employment-related injuries.

We reverse.  The Supreme Court has consistently reaffirmed its holding in *Carlson v. Green*, 446 U.S. 14 (1980), that federal prisoners may bring *Bivens* claims under the Eighth Amendment against federal prison officials.  Joining the three other circuits to have considered this issue, we conclude that the IACA does not displace such an action simply because the alleged Eighth Amendment violation occurred in the context of the prisoner's employment.  *See Smith v. United States*, 561 F.3d 1090 (10th Cir. 2009); *Bagola v. Kindt*, 131 F.3d 632 (7th Cir. 1997); *Vaccaro v. Dobre*, 81 F.3d 854 (9th Cir. 1996).  We affirm the district court's dismissal of Koprowski's other claims and remand for further proceedings.

**I.  BACKGROUND**

On November 23, 2009, Koprowski was cleaning a fry hood in the food-service area of the prison when he fell off a step ladder and landed on his back.  Koprowski lost feeling in his legs for a few minutes and experienced severe pain when he finally stood up.  He had difficulty walking for the next several days, and the intense pain persisted even while lying down.

Koprowski alleges that the prison's medical staff treated his injuries as minor and temporary, thereby causing him unnecessary pain and further aggravating his condition. He says the medical staff delayed taking x-rays and refused to perform a Magnetic Resonance Imaging ("MRI") scan, which would have shown that he had broken his back. Koprowski also claims that prison staff denied him access to specialized care, surgery, and ambulatory aids. In one instance, he claims, staff threatened to send him to solitary confinement unless he surrendered a wheelchair he had been using; when he complied with their order to walk, the resulting pain and fatigue caused him to be bedridden for several hours. Another time, Koprowski allegedly was sent to a segregation unit—"the hole"—as punishment for being unable to walk to his work assignment.

About a week after his injury, when his pain had not abated, Koprowski's back finally was x-rayed. The x-rays showed a wedge compression fracture of the L3 vertebra. A subsequent x-ray taken in January 2010 showed that the fracture had worsened. Koprowski alleges this injury resulted from his fall and has led to continued pain and permanent disability.

Koprowski complained about the prison's treatment of his injury through its Administrative Remedy Procedure ("ARP"). He was also eligible to receive lost-time wages through the IACA for the work he missed as a result of the injury, and to seek compensation should he still have a "physical impairment" at the time of his release. *See* 28 C.F.R. § 301.101.

In July 2011, Koprowski brought this *Bivens* suit against six prison officials, who are defendants-appellees here. Most germane to this appeal, Koprowski alleges the defendants violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs. The district court granted the defendants' motion to dismiss, finding that the IACA is the exclusive vehicle by which a federal inmate may receive compensation for injuries suffered during the course of his employment in prison. The district court also dismissed Koprowski's other claims, brought under the First, Fifth, and Fourteenth Amendments.

After the district court denied Koprowski's post-trial motions, he timely appealed.

## II. ANALYSIS

### A. Jurisdiction and Standard of Review

As an initial matter, we must decide whether the defendants' challenge is jurisdictional. The district court dismissed Koprowski's Eighth Amendment claim for lack of subject-matter jurisdiction. We disagree. We have jurisdiction to adjudicate claims that arise under the Constitution, including Koprowski's Eighth Amendment claim. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (citing 28 U.S.C. § 1331). The relevant question here is whether judicial relief is available to Koprowski for his claim. *See Davis v. Passman*, 442 U.S. 228, 244 (1979). We review the district court's dismissal de novo, taking all well-pleaded allegations in the complaint as true. *Left Fork Mining Co. v. Hooker*, 775 F.3d 768, 773 (6th Cir. 2014).

### B. The *Bivens* Doctrine and the Eighth Amendment

In *Bivens*, the Supreme Court held that an individual injured by a federal officer's violation of the Fourth Amendment may bring an action in federal court seeking money damages from the officer. *Bivens*, 403 U.S. at 397. The Court held that the cause of action arose under the Fourth Amendment itself, and that a judicially created remedy was necessary to give the plaintiff a "remedial mechanism" to redress the violation of his constitutional right. *Id.* at 395–97. The Court noted that creating a money-damages remedy for Fourth Amendment violations did not involve any "special factors counseling hesitation in the absence of affirmative action by Congress." *Id.* at 396. But the Court also acknowledged that Congress could limit such actions by creating "another remedy, equally effective in the view of Congress." *Id.* at 397.

The Supreme Court later extended the *Bivens* doctrine to allow the estate of a federal prisoner to bring a money-damages suit against federal officers who violated his Eighth Amendment right to be free from cruel and unusual punishment. *Carlson*, 446 U.S. at 18–23. The prisoner in *Carlson* had died after an asthma attack due to prison officials being "deliberately indifferent" to his "serious medical needs." *See id.* at 16–17 & n.1 (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). The Court reiterated its discussion from *Bivens* that a cause of action for money damages arising directly under the Constitution could be defeated, either if

"special factors counsel[] hesitation" or if "Congress has provided an alternative remedy." *Id.* at 18–19. The Court found, however, that no "special factors" counseled against allowing the claim because prison officials "do not enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate," and that qualified immunity "provides adequate protection" against disruptions in their official duties from these sorts of suits. *Id.* at 19. The Court next considered whether the provision of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(h), creating a cause of action against the United States for intentional torts committed by federal law enforcement officers, displaced the plaintiff's Eighth Amendment claim. *Carlson*, 446 U.S. at 19–20. The Court found that "the congressional comments accompanying [the Act] made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.* Based on these considerations, the Court ultimately held that the plaintiff could pursue his Eighth Amendment claim.

**C. Availability of a *Bivens* Remedy to Koprowski**

*Carlson* provides the starting point for the case before us. A prisoner can state a claim under the Eighth Amendment against federal prison officials who have been deliberately indifferent to his serious medical needs. *Carlson* also provides, however, that Congress may displace that right if a statutory scheme provides an alternative remedy. 446 U.S. at 18–19. Defendants argue that two statutory schemes, the IACA and the ARP, do just that.

*1. The IACA*

The Supreme Court has not expressly addressed whether the IACA is meant to exclude a prisoner's ability to seek money damages from a prison official for a *constitutional* tort like the one claimed by Koprowski. Three other circuits have addressed the question,[1] and each of them has come out the same way: The IACA does not displace an Eighth Amendment *Bivens* claim. *See Smith*, 561 F.3d at 1102–03; *Bagola*, 131 F.3d at 637–45; *Vaccaro*, 81 F.3d at 857. These

---

[1]We have held in three summary, unpublished cases that the IACA precludes any Eighth Amendment claims arising from medical treatment related to a prison workplace injury. *See Springer v. United States*, 229 F.3d 1154, 2000 WL 1140767 (6th Cir. 2000) (table); *Walls v. Holland*, 198 F.3d 248, 1999 WL 993765 (6th Cir. 1999) (table); *Fraley v. Dep't of Justice*, 113 F.3d 1234, 1997 WL 225495 (6th Cir. 1997) (table). However, unpublished opinions do not bind us. *See* 6 Cir. R. 32.1.

Circuits have noted the lack of a clear statement from Congress as to whether the IACA displaces *Bivens* claims. *Smith*, 561 F.3d at 1102; *Bagola*, 131 F.3d at 639. They have found that the IACA's scheme does not adequately protect prisoners' Eighth Amendment rights because it does not deter unconstitutional conduct or provide a forum to address violations. *Smith*, 561 F.3d at 1103; *Bagola*, 131 F.3d at 639, 642–45; *see Vaccaro*, 81 F.3d at 857. And they saw no special factors to suggest that a *Bivens* remedy is inappropriate. *Bagola*, 131 F.3d at 642–44. We agree and hold that the IACA does not displace Koprowski's Eighth Amendment *Bivens* claim.

> a. Explicit Statement

The first and potentially dispositive question in this case is whether Congress has spoken. If Congress has explicitly stated in either the statute or the legislative history that the IACA is meant to complement or to preclude a *Bivens* remedy, we will give effect to that intent. *See Bush v. Lucas*, 462 U.S. 367, 378 (1983). Here, however, Congress is silent. Despite making technical amendments to the IACA in 1988 and 2004, Congress made no express statement in the text of the statute as to the interplay between the IACA and *Bivens*. *Smith*, 561 F.3d at 1101 n.12 ("The [IACA] was amended . . . without any Congressional comment on the relationship between that Act and *Bivens* claims."). The parties have not pointed us to any relevant legislative history in this regard, and apparently none exists. We presume Congress was aware in 2004 of the Seventh and Ninth Circuits' decisions allowing *Bivens* claims despite the IACA, *see Bagola*, 131 F.3d 632; *Vaccaro*, 81 F.3d 854, and therefore Congress's decision not to speak on this issue might suggest some degree of acquiescence. *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 698–99 (1979) ("[O]ur evaluation of congressional action . . . must take into account its contemporary legal context."); *Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.").

The closest we have to a direct statement from Congress is that it specified a cap on damages that can be paid out under the IACA: "In no event may compensation for [workplace-related] injuries be paid in an amount greater than that provided in" the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. 8101, *et seq.*, the workers' compensation system that

covers federal employees. 18 U.S.C. § 4126(c). But this statement merely begs the question of which injuries fall within the scope of the IACA and therefore are subject to the cap. It is worth noting, however, that the FECA specifically contemplates the possibility of an injured government worker seeking compensation from someone *other* than the United States who is also liable for the injury, which may include a *Bivens* claim against a fellow employee for a violation of the injured worker's constitutional rights. *See* 5 U.S.C. § 8132; *Gustafson v. Adkins*, 803 F.3d 883, 890 (7th Cir. 2015) (collecting cases reaching this result, including *Bates v. Harp*, 573 F.2d 930, 934–35 (6th Cir. 1978)).

Thus, the IACA's cross-reference to the FECA does not exclude the possibility that a prisoner may have a cause of action against a prison official who injured him despite the operation of the IACA. Instead, the cross-reference supports the notion that Congress may have contemplated that the IACA and *Bivens* actions are complementary.

### b. The IACA's Structure

Without an explicit statement from Congress, we next look to the structure of the IACA to determine whether it is an "alternative, existing process for protecting the [constitutional] interest" at stake, thereby providing a "convincing reason for the Judicial Branch to refrain from providing a . . . [*Bivens*] remedy in damages." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (citing *Bush*, 462 U.S. at 378). In deciding whether the IACA is meant to displace Koprowski's Eighth Amendment *Bivens* claim, the slate is not blank. Two Supreme Court decisions lead us to conclude that a *Bivens* action remains available to prison workers like Koprowski.

#### i. Precedent

In *United States v. Demko*, 385 U.S. 149, 153 (1966), the Court "accept[ed] the prison compensation law as an adequate substitute for a system of recovery by common-law torts," and held that prison workers' exclusive remedy for common-law torts was the IACA. As such, the IACA displaced any other common-law tort claims that could be brought against the United States under the Federal Tort Claims Act, which otherwise allows for such claims. *Id.* In coming to this conclusion, the Court recognized that workers' compensation schemes (such as the IACA) "were the offspring of a desire to give injured workers a quicker and more certain

recovery than can be obtained from tort suits *based on negligence* and *subject to common-law defenses* to such suits." *Id.* at 151 (emphasis added). Because the IACA and the FTCA protect against the same sort of harm, the IACA displaces the FTCA. *Id.* at 152–53; *see also Vaccaro*, 81 F.3d at 857. *Demko* thus stands for the unremarkable proposition that the IACA and FTCA are similar in the interests they protect.

But *Carlson*, which was decided over a decade after *Demko*, expressly distinguishes between common-law torts remedied by the FTCA and Eighth Amendment claims cognizable under *Bivens*. The Court analyzed the interests that the Eighth Amendment protects, as compared to the work that the FTCA does, and concluded: "Plainly FTCA is not a sufficient protector of the citizens' constitutional rights . . . ." *Carlson*, 446 U.S. at 23; *see also Bagola*, 131 F.3d at 642 n.15. As such, the FTCA is not meant to displace *Bivens* actions, and the two act in concert.

Taken together, *Demko* and *Carlson* make clear that the IACA and FTCA operate in one sphere (common-law torts), and *Bivens* operates in another (constitutional torts). Put another way, we know from the Supreme Court that the IACA and FTCA are similar, whereas claims under the FTCA and *Bivens* actions are dissimilar. *Demko* and *Carlson* thus lead us to conclude that the IACA does not displace *Bivens* actions for prison workers.

### ii. The Workings of the IACA

Our own review of the IACA's structure confirms this conclusion. The IACA authorizes the Attorney General to promulgate regulations creating a workers' compensation scheme for federal prisoners who are injured during the course of their prison employment. *See* 18 U.S.C. § 4126(c); 28 C.F.R. § 301.101. After missing three consecutive days of work, prisoners are paid 75 percent of their lost wages for any additional work missed. 28 C.F.R. § 301.203. If the prisoner disagrees with the prison's determination as to whether his injury was actually work-related, he may appeal through the ARP—the Bureau of Prisons' ("BOP") general grievance process. 28 C.F.R. § 301.205.

If the prisoner's injury creates a "physical impairment" that still exists at the time the prisoner is released, then no earlier than 45 days before he is released the prisoner may file a

claim to recover additional compensation; the amount recoverable is specified in the compensation schedule of the FECA, 5 U.S.C. § 8107. 28 C.F.R. § 301.314. The initial determination on this claim is made by an examiner. If the prisoner disagrees with the examiner's decision, he may seek an evidentiary hearing before an Inmate Accident Compensation Committee. If still dissatisfied with the Committee's decision, the prisoner may further appeal to the Chief Operating Officer of the federal prison system. *See* 28 C.F.R. §§ 301.303–.315. At no point during the process is blame assigned.

The no-fault nature of the IACA strongly suggests that it is an inadequate alternative to a *Bivens* action. As the Seventh Circuit neatly put it: The IACA does not "provide[] a forum where the allegedly unconstitutional conduct would come to light." *Bagola*, 131 F.3d at 643. The prison-workers' compensation scheme thus looks strikingly different from the alternative schemes the Supreme Court considered in *Bush* and *Schweiker*, two cases on which the defendants heavily rely. In *Bush*, the plaintiff, a NASA employee who alleged he had been demoted for publicly criticizing his superiors, was protected by an "elaborate" and "comprehensive" civil service system. *Bush*, 462 U.S. at 385–87. This system allowed the plaintiff to litigate fully his First Amendment challenge to NASA's employment action. *Id.* Similarly, the plaintiffs in *Schweiker*, who alleged that government officials had violated their due process rights by improperly denying their Social Security disability benefits, were able to expose publicly the actions of those officials, leading Congress to amend the disability benefits program specifically to address due process concerns. *Schweiker v. Chilicky*, 487 U.S. 412, 415–17 (1988).

The IACA, by contrast, is a no-fault compensation scheme. It presupposes recovery without blame—after all, it is the Inmate *Accident* Compensation Act. Under the scheme, all that matters is the nature of the injury, not the underlying conduct. Thus, "the conduct that caused the work-related injury is not relevant and likely will not be exposed by the claim evaluation process." *Bagola*, 131 F.3d at 644. As a result, the IACA, acting alone, "not only insulates prison officials who violate an individual's constitutional rights from individual liability, . . . it also shrouds their potentially unconstitutional conduct within a no-fault compensation system." *Id.* For this reason, the Tenth Circuit followed the reasoning of *Bagola* and noted, "there is very

little deterrent effect for constitutional harms within the [IACA], and there is no alternative forum where the alleged constitutional violation could be addressed." *Smith*, 561 F.3d at 1103.

The lack of accountability is important when determining whether an alternative scheme protects the constitutional interest at stake, thereby precluding a *Bivens* remedy. "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Malesko*, 534 U.S. at 70. "It is almost axiomatic that the threat of damages has a deterrent effect, surely particularly so when the individual official faces personal financial liability." *Carlson*, 446 U.S. at 21 (citation omitted). That is why, in *FDIC v. Meyer*, 510 U.S. 471, 485 (1994), the Supreme Court held that a plaintiff cannot bring a *Bivens* action against a federal agency: the deterrent effect would be lost if a plaintiff could sue the relevant agency rather than the individual officer. By contrast, in *Minneci v. Pollard*, 132 S. Ct. 617, 623–25 (2012), the Supreme Court held that the availability of state tort actions is sufficiently adequate to preclude a *Bivens* remedy against employees of a privately operated federal prison because prisoners can still bring money-damages suits against those employees. *See id.* at 625 ("[S]tate tort law remedies provide roughly similar incentives for potential defendants to comply with the Eighth Amendment . . . .").

In contrast, the IACA does not adequately deter unconstitutional conduct because prison officials have no skin in the game under the workers' compensation scheme.[2] Of course, the prison officials have qualified immunity to shield them. Still, "the threat of litigation and liability will adequately deter federal officers for *Bivens* purposes no matter that they may enjoy qualified immunity, are indemnified by the employing agency or entity, or are acting pursuant to an entity's policy." *Malesko*, 534 U.S. at 70 (citations omitted).

---

[2]Furthermore, not only would displacing a *Bivens* remedy in these circumstances fail to deter unconstitutional conduct, it could potentially create a moral hazard. Once again, federal prison officials are generally subject to Eighth Amendment money damages claims under *Carlson*. If we were to decide that the IACA displaces this otherwise-available *Bivens* remedy, we would have effectively carved out one area of prison life where personal liability cannot attach. The message to prison officials would be clear: if you want to harm a prisoner and get away scot-free, just do it while he's at work. Congress can tell us that that was its intent but, absent such an explicit statement, this troubling result suggests to us that the IACA as currently designed would not adequately protect prisoners' Eighth Amendment rights.

At base, an Eighth Amendment money-damages suit and a run-of-the-mill IACA claim based on an accident in the workplace are fundamentally different. The two types of actions seek different damages for different harms arising under different theories from different defendants. *See Vaccaro*, 81 F.3d at 857. In an IACA claim, a prisoner seeks workers' compensation from the employer (the United States) for an on-the-job injury, similar to the type any employee could suffer in the course of her employment. An Eighth Amendment action seeks something significantly different: compensation from a prison official for unnecessary pain that can be inflicted only on a prisoner by such an official. *See Bagola*, 131 F.3d at 645. Absent a *Bivens* remedy, a prisoner who is subject to such a gratuitous infliction of injury in the workplace could not seek redress for that constitutional injury. That prisoner can receive IACA damages for time missed from work, and for any permanent disability upon release. But the quintessential aspect of an Eighth Amendment claim—cruel and unusual punishment—would go unaddressed. That is not to say that the remedy offered by an alternative scheme must "be perfectly congruent" to a *Bivens* remedy, *Minneci*, 132 S. Ct. at 625, or offer the same amount of compensation, *see Schweiker*, 487 U.S. at 425. But for an alternative process to be adequate, it must "protect the constitutional interests at issue." *Minneci*, 132 S. Ct. at 624. This, the IACA does not do.

One final point about workers' compensation schemes helps to put all of this into context. Such schemes typically cover only accidents and do not prevent workers from bringing suit for intentional torts they suffer in the workplace. *See* Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 1, comment a (2016) ("The exclusivity of the workers'-compensation system is limited, however, to accidental injuries; it does not apply if the employer has committed an intentional tort against the employee."). Additionally, workers' compensation laws generally recognize that certain wrongs can be remedied outside of the scheme without disrupting the scheme's effect. *Id.* The existence of the IACA, therefore, does not, in and of itself, suggest that prisoners should be prevented from seeking redress when prison officials go beyond mere negligence and violate the prisoners' Eighth Amendment rights.

2. *The ARP*

The defendants also contend that prisoners have an additional avenue for relief to vindicate their constitutional rights: the ARP, BOP's grievance process that "allow[s] an inmate to seek formal review of an issue relating to any aspect of his [or] her own confinement," including allegations of unconstitutional conduct by prison officials. 28 C.F.R. § 542.10(a). Once the ARP's grievance procedure has been completed, the inmate may file suit in federal court seeking injunctive relief. *See Malesko*, 534 U.S. at 74.

But the ARP, which has been in effect for nearly four decades, *see* 44 Fed. Reg. 62,248–51 (Oct. 29, 1979), did not affect the Supreme Court's conclusion in *Carlson*, nor the decisions of the Seventh, Ninth, and Tenth Circuits. More to the point, since *Carlson*, the Supreme Court has explicitly held that the ARP does not displace a *Bivens* remedy because it is not an effective substitute for a money-damages action. *McCarty v. Madigan*, 503 U.S. 140, 151 (1992), *superseded in part on other grounds by statute*, Prison Litigation Reform Act of 1995, Pub. L. 104-134, 110 Stat. 1321–71. Instead, in *McCarty* the Supreme Court once again reaffirmed *Carlson*'s holding that prisoners may bring Eighth Amendment claims against prison officials despite the existence of the ARP. *See id.*

3. *Special Factors*

Having determined that the IACA is not an adequate alternative process to protect a prisoner's Eighth Amendment rights, the final question is whether any "special factors counsel[] hesitation" against allowing a *Bivens* suit to proceed. *Wilkie*, 551 U.S. at 550 (quoting *Bush*, 462 U.S. at 378). These special factors exist to help the court "make the kind of remedial determination that is appropriate for a common law tribunal." *Id.* (quoting *Bush*, 462 U.S. at 378). That is, the court must "weigh[] reasons for and against" allowing a *Bivens* action in this context. *Id.* at 554.

In *Carlson*, the Supreme Court explicitly found that no special factors suggested that an Eighth Amendment *Bivens* remedy would be inappropriate. 446 U.S. at 19. First, federal prison officials "do not enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate." *Id.* Second, qualified

immunity protects federal prison officials such that the availability of a *Bivens* remedy would not overly interfere with their ability to do their jobs. *Id.*

The defendants want to re-litigate the second point, but *Carlson* has already closed the door on their arguments. Even though subjecting prison officials to personal liability through *Bivens* suits "might inhibit" prison officials in "their efforts to perform their official duties," qualified immunity "provides adequate protection." *Id.* at 19. The Supreme Court's conclusion has become even more pertinent over time because the qualified-immunity doctrine has expanded to give more protection to government officers. *See Bagola*, 131 F.3d at 638 & n.12 (contrasting the pre-*Carlson* case of *Butz v. Economou*, 438 U.S. 478 (1978), with the later case of *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). Furthermore, the defendants have not presented any evidence of their concerns actually manifesting themselves in the three circuits that already allow *Bivens* suits despite the existence of the IACA.

In sum, the defendants have not put forth any new special factors for us to consider. And we find no special factors that require us to preclude *Bivens* relief here.

### 4. The Dissent

The dissent notes that, since *Carlson*, the Supreme Court has increasingly expressed skepticism about expanding the *Bivens* doctrine to new situations. *See, e.g., Schweiker*, 487 U.S. at 421; *see also Malesko*, 534 U.S. at 75 (Scalia, J., concurring). But this case does not present an opportunity to expand *Bivens*. *Cf., e.g., Engel v. Buchan*, 710 F.3d 698, 705 (7th Cir. 2013) (extending *Bivens* into the "new" context of claims alleging violations of *Brady v. Maryland*, 373 U.S. 83 (1963)). For more than 30 years, the Supreme Court has repeatedly affirmed the holding of *Carlson*: prisoners may bring money-damages actions under the Eighth Amendment against federal prison officials.

In *Malesko*, 534 U.S. at 71–72, for example, the Supreme Court declined to allow *Bivens* suits against private corporations operating halfway houses under contract with the BOP, but still recognized that "a federal prisoner in a BOP facility . . . may bring a *Bivens* claim against the offending individual officer." Similarly, in *Minneci*, 132 S. Ct. at 623–24, the Supreme Court held that a prisoner could not bring an Eighth Amendment claim against employees of a

privately operated federal prison, but in so doing reaffirmed *Carlson* by distinguishing the reasons why a prisoner in a prison operated by the federal government could bring such a claim. Here, Koprowski's claim is the same as the claim that the Supreme Court allowed in *Carlson*: an Eighth Amendment claim against officers working in a prison run by the federal government.

The dissent looks at this case from the opposite direction. It presumes no *Bivens* remedy is available despite *Carlson*, and then asks whether we should create one, with a heavy presumption against doing so. But only the Supreme Court may overrule its own precedents, and we are bound by its decision "until such time as the Court informs [us] that [we] are not." *Hicks v. Miranda*, 422 U.S. 332, 345 (1975) (internal quotation marks and citation omitted). Although some of *Carlson*'s analytical framework has been altered by later decisions, its core holding allowing just this sort of suit binds us. *See Minneci*, 132 S. Ct. at 623–24.

In addition to presuming that no *Bivens* remedies should exist, the dissent's "special factors" analysis presumes that Congress balanced the policy considerations at play and intended for the IACA to displace *Carlson*. We agree that Congress is the better institution for balancing competing policy concerns, and that is why we defer to its expressed judgments. *See Wilkie*, 551 U.S. at 562. But, as we've explained, Congress's intent to displace *Bivens* actions with the IACA is not apparent. Moreover, if Congress's intent were clear, we would not need to engage in the special-factors analysis at all.

## D. Absolute Immunity

Beyond disagreeing with our *Bivens* analysis, the dissent treks an even more extreme path. Relying on *Hui v. Castaneda*, 559 U.S. 799 (2010), the dissent argues that the IACA not only displaces the Eighth Amendment *Bivens* claim, but also grants prison officials absolute immunity from suit. In *Hui*, the Supreme Court held that a specialized provision within the FTCA making certain remedies against the United States "exclusive of any other civil action or proceeding by reason of the same subject-matter against" certain public-health employees, 42 U.S.C. § 233(a), effectively grants absolute immunity to those specific public-health employees. *See Hui*, 559 U.S. at 805–06. The Court looked to "[t]he breadth of the words

'exclusive' and 'any,'" as well as the "inclusive reference to all civil proceedings arising out of 'the same subject-matter'" to reach this conclusion. *See id.* at 806.

Before addressing the merits of this argument, we note that neither side has raised absolute immunity as an issue in this case.**3** "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.). Instead, "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). "Only in exceptional cases or particular circumstances or when the rule would produce a plain miscarriage of justice do we exercise our discretion to entertain arguments not raised before the district court." *Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 454 (6th Cir. 2009) (internal citation and quotation marks omitted). Accordingly, we would decline to address the merits of the absolute-immunity issue even if the dissent were correct on the merits. That said, we disagree with the dissent.

The IACA is a bare-bones statute devoid of the sweeping language of exclusivity present in 42 U.S.C. § 233(a), the statute at issue in *Hui*. It provides only that the Attorney General may promulgate regulations to compensate inmates for workplace injuries. *See* 18 U.S.C. § 4126. There is no indication that Congress intended to grant absolute immunity to prison officials through the IACA. *Cf. Carlson*, 446 U.S. at 20 ("Congress follows the practice of explicitly stating when it means to make FTCA an exclusive remedy." (citing, among other statutory provisions, 42 U.S.C. § 233(a))). "Since the statute on its face does not provide for *any* immunities, we would be going far to read into it an absolute immunity . . . ." *Malley v. Briggs*, 475 U.S. 335, 342 (1986).

Having no statutory support, the dissent instead relies on the Supreme Court's use of the word "exclusive" in *Demko*. First, as we have already explained, *Demko* was discussing a different type of injury. We agree with the dissent that the IACA is "the exclusive remedy" for prisoners seeking compensation from the United States for common-law torts suffered in the course of their workplace injuries; those prisoners may not also bring claims under the FTCA.

---

**3**The defendants asserted a defense of *qualified* immunity in the district court but have not raised it here. (*See* Motion to Dismiss, R. 60-1, PageID 1999–2001.)

*See Demko*, 385 U.S. at 152; *Vaccaro*, 81 F.3d at 857; *cf. Saltsman v. United States*, 104 F.3d 787, 790 (6th Cir. 1997) (similarly holding that the "exclusive" nature of the FECA's workers' compensation scheme precludes a simultaneous action against the United States under the FTCA). But this statement from the Supreme Court regarding the interplay between the IACA and the FTCA with respect to claims against the United States fails to demonstrate that Congress intended to grant absolute immunity to federal prison officials.

Moreover, the use of the word "exclusive" in one of the promulgated regulations does not alter our view. The regulation cited by the dissent, 28 C.F.R. § 301.319, speaks specifically to the exclusivity of the IACA with respect to claims that could otherwise be brought under the FTCA. That regulation cites *Demko* for the proposition that any prisoner who has an IACA claim is "barred from recovery under the [FTCA]." *Id.* Thus, the regulations do no more than reiterate the holding of *Demko*.

Finally, the official asserting absolute immunity has the burden of showing that immunity is justified for any particular function, and "[t]he presumption is that qualified immunity is sufficient to protect government officials in the exercise of their duties." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 n.4 (1993) (citing *Burns v. Reed*, 500 U.S. 478, 486–87 (1991)). To hold that executive officers have absolute immunity, despite making no argument for it and having no statement from Congress intending such a result, would undermine the historically limited application of absolute immunity. We respectfully decline the dissent's unsolicited invitation to travel down such a path.

**E. Other Constitutional Claims**

Having found that Koprowski's Eighth Amendment claim should not have been dismissed, we briefly address the dismissal of Koprowski's other *Bivens* claims alleging violations of his First, Fifth, and Fourteenth Amendment rights. We affirm the district court's dismissal of these claims.

Korprowski alleges that the defendants retaliated against him for complaining about his medical care, thereby violating his First Amendment rights. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). The district court dismissed this claim because Koprowski

had failed to exhaust his administrative remedies. *See* 42 U.S.C. § 1997e(a). Koprowski makes vague assertions in this appeal that he could not exhaust his administrative remedies because he feared further retaliation, but his repeated informal complaints to prison staff about his medical care suggest otherwise. *See Sarah v. Bradley*, 66 F. App'x 562, 563 (6th Cir. 2003). Because Koprowski has not shown a reason to excuse his failure to exhaust his administrative remedies, we affirm the dismissal of this claim.

Koprowski's complaint also alleges that the defendants' inadequate medical care violated his due process and equal protection rights under the Fifth and Fourteenth Amendments. Koprowski has not specifically addressed these claims on appeal, and has therefore forfeited them. *See Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 311 (6th Cir. 2005).

### III.  DISCOVERY AND POST-TRIAL MOTIONS

After the district court dismissed Koprowski's claims, he filed: (1) a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), raising discovery-related issues, and (2) motions to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a). The district court denied these motions. We review these decisions for an abuse of discretion. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 522 (6th Cir. 1999).

First, the district court did not abuse its discretion in denying Koprowski's motion to amend his complaint to add claims after judgment had already been entered against him. When a motion to amend a complaint follows a judgment against the plaintiff, the need to protect the finality of judgments requires that the plaintiff "shoulder a heav[y] burden" and "provide a compelling explanation" to reopen the case. *See Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616–17 (6th Cir. 2010). The district court found that the claims Koprowski sought to add were based on facts he had known both when he filed his original complaint and when he twice amended the complaint during the litigation. We agree that there was no compelling reason to allow a post-judgment amendment to the complaint under these circumstances.

Second, Koprowski's Rule 59(e) motion for reconsideration renewed a previously raised argument that the defendants had failed to serve him with a copy of the medical records that

were attached to the defendants' motion to dismiss. On reconsideration, the district court described defense counsel's actions in failing to turn over these documents as "disconcerting," and concluded that defense counsel had "acted improperly" in certifying that he had served those records when in fact he had not. Nevertheless, the district court denied the Rule 59(e) motion because Koprowski's claims had been dismissed on purely legal grounds, and therefore the failure to turn over the records did not prejudice his case. Given our decision here that Koprowski's Eighth Amendment claim is legally viable, we leave it to the district court on remand to determine the effect of the government's failure to serve these documents.

## IV.  CONCLUSION

We reverse the dismissal of Koprowski's Eighth Amendment *Bivens* claim. The IACA does not displace this otherwise available claim just because the alleged unconstitutional conduct occurred in the context of a prison workplace injury. We affirm the dismissal of Koprowski's other claims. Finally, we remand the case for further proceedings consistent with this opinion.

---

**DISSENT**

---

SUTTON, Circuit Judge, dissenting.   Today's case asks whether a prisoner has an implied right of action to obtain money damages for an Eighth Amendment violation under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), even when an exclusive workers' compensation statute covers those same injuries.  The court says yes; I respectfully say no.   The Supreme Court's consistent skepticism of implied rights of action of this sort, exemplified by its rejection of every such claim since 1980, together with the exclusive nature of this workers' compensation regime, leaves no room for this claim.

I.

Courts ask two questions in this context:  Does an implied right of action under *Bivens* exist?  If so, are the defendants nevertheless "immune from suit"?  *Hui v. Castaneda*, 559 U.S. 799, 807 (2010).   I would hold that no implied right of action exists in the workers' compensation context, and that even if it did these defendants remain immune from suit.

A.

This issue straddles two judicial eras—one that embraced implied rights of action and one that does not.  In the first era, the Court did not hesitate to infer a private right of action to vindicate a statutory violation, whether the statute provided a cause of action or not.  *See, e.g.*, *J.I. Case Co. v. Borak*, 377 U.S. 426, 433–34 (1964).  It did the same for federal constitutional violations in *Bivens*.  After *Bivens*, a Fourth Amendment case, the Court inferred a right of action for some Fifth Amendment violations, *see Davis v. Passman*, 442 U.S. 228, 248–49 (1979), and some Eighth Amendment violations, *see Carlson v. Green*, 446 U.S. 14, 18–23 (1980).

But the Court has grown wary of implied rights of action over the last three decades.  That has been true of statutory cases.  *See Alexander v. Sandoval*, 532 U.S. 275, 287 (2001); *see also Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 164–65 (2008); *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002).  And that has been especially true of constitutional

cases. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67 n.3 (2001). Since 1980, the Court has rejected every effort—"more than a dozen" by one count, *Vance v. Rumsfeld*, 701 F.3d 193, 198 (7th Cir. 2012) (en banc)—"to extend *Bivens* liability to any new context or new category of defendants." *Malesko*, 534 U.S. at 68. As that track record suggests, the Court sees implied constitutional rights of action as "unjustified" in "most instances." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

In both eras, the Court looked to the same two considerations. A *Bivens* action may not proceed if (1) "any alternative, existing process for protecting the interest [of the plaintiff]" exists *or* (2) "special factors counsel[]" against applying *Bivens*. *Id.* (quotation omitted); *see Carlson*, 446 U.S. at 18–19. What changed was a "presumption in favor of a *Bivens*-like remedy," which has "long since been abrogated." *Vance*, 701 F.3d at 198. Under the former regime, the Court denied a *Bivens* remedy only if the "defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." *Carlson*, 446 U.S. at 18–19. Ever since *Carlson* in 1980, any requirement that Congress "explicitly" declare that other avenues of relief are an "equally effective" "substitute" for a *Bivens* action has disappeared. *See, e.g.*, *Minneci v. Pollard*, 132 S. Ct. 617, 621–23 (2012). Instead of an inquiry that makes it difficult to deny a private right of action (and presumes the existence of one), the current inquiry makes it difficult to find a private right of action (and presumes the absence of one). The new inquiry is not the same as the old one, as the case outcomes from the last thirty-six years demonstrate.

All of this explains why the pre-1981 outcomes tug in one direction, and the post-1980 outcomes pull in the other. Under the Court's current test, the one that governs today, we are left to answer these questions: Is there "any alternative, existing process" for protecting the plaintiff's interests? And are there any "special factors" that counsel against applying *Bivens*? *Wilkie*, 551 U.S. at 550 (quotation omitted). In answering the first question, we do not require, as the Court once seemed to require, that Congress explicitly state that any alternative remedy amounts to an equally effective substitute. That is what I take the Sixth Circuit cases to be doing, *see Left Fork Mining Co. v. Hooker*, 775 F.3d 768, 774 (6th Cir. 2014), including all of

the unpublished ones that reject a private right of action in this precise area, *see Springer v. United States*, 229 F.3d 1154 (6th Cir. 2000); *Walls v. Holland*, 198 F.3d 248 (6th Cir. 1999); *Fraley v. Dep't of Justice*, 113 F.3d 1234 (6th Cir. 1997); *cf. Schoor v. Thornburgh*, 983 F.2d 1068 (6th Cir. 1992).

*Alternative avenue of relief.* The first question, then, is whether alternative forms of relief exist. When Congress has paid "careful attention" to the plaintiff's injury by creating a process that provides "an avenue for some redress" of the alleged injury, the courts will not infer a *Bivens* action. *Malesko*, 534 U.S. at 69; *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988). In these instances, "bedrock principles of separation of powers" show that "Congress expected the Judiciary to stay its *Bivens* hand" and instead apply the statutory remedy. *Malesko*, 534 U.S. at 69; *Wilkie*, 551 U.S. at 554.

If ever there were a pertinent alternative form of relief, it would be the Inmate Accident Compensation Act, which creates a workers' compensation system for federal inmates. The Act compensates "inmates or their dependents for injuries suffered . . . in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126(c)(4). It pays for actual injuries and for lost-time wages. 28 C.F.R. § 301.101. It awards money regardless of whether inmates prove that the prison officials were at fault. And it casts a wide net, covering every injury "proximately caused" by a work assignment, *id.* § 301.102(a), *and* all injuries resulting from the "improper medical treatment of a work-related injury," *id.* § 301.301(b).

The Act also establishes an "extensive and comprehensive review process," which is "precisely the kind of remedial structure that precludes a judicially-created remedy." *Left Fork*, 775 F.3d at 775. After the federal employer makes its initial compensation determination (using "all [of the] available evidence," 28 C.F.R. § 301.305), the inmate has the right to an in-person appeal before a committee, *id.* § 301.306(b). In the appeal, the inmate may submit additional evidence, call witnesses, cross-examine the government's witnesses, and be represented by counsel. *Id.*; *see id.* §§ 301.309–.310. If the inmate remains dissatisfied with the outcome, he may appeal to the corporation's Chief Operating Officer. *Id.* § 301.313. And if all else fails, he may seek review in federal court. *See* 5 U.S.C. §§ 701–706.

In the words of the Supreme Court, the "comprehensive" system established by the Act creates an "exclusive" and "adequate substitute for a system of recovery by common-law torts." *United States v. Demko*, 385 U.S. 149, 152–53 (1966). If those words sound pertinent to the question at hand, that is because *Demko* involved a case materially identical to this one. At stake in *Demko* was whether the Act's remedies were exclusive and thus precluded a separate lawsuit under the Federal Tort Claims Act. The Court held that the Act's remedies for work-related injuries were exclusive, regardless of whether a claimant might obtain more or even better relief under the Federal Tort Claims Act. Just so here.

That's not the only suggestion—in truth directive—the Court gives us. From the Court's mouth to our ears, the "analysis" in the Federal Tort Claims Act of an alternative enforcement regime "guides [the] analysis" in the *Bivens* context. *Chappell v. Wallace*, 462 U.S. 296, 299 (1983). What precludes negligence actions against the government thus should preclude *Bivens* actions against individual officials. *See United States v. Stanley*, 483 U.S. 669, 681, 683–84 (1987). Because *Demko* establishes that the Act precludes claims under the Federal Tort Claims Act, the Act precludes claims under *Bivens*. Else, this workers' compensation statute would preclude an express congressional cause of action but not a judicially implied one. That's precisely what *Wallace* and *Stanley* prevent. Just as the Act excludes claims under the Federal Tort Claims Act (a regime designed to compensate for common law torts), it excludes *Bivens* actions (a regime designed to compensate for constitutional torts).

That's all one needs to know to resolve this case. The rest is gravy.

But gravy there is. In addition to the remedies supplied by the Act, the Bureau of Prisons' remedial mechanisms and the option of an injunction action gave Koprowski a way to halt unconstitutional (or other wrongful) prison-official conduct. *Malesko*, 534 U.S. at 74; *see Ex parte Young*, 209 U.S. 123 (1908); 28 C.F.R. § 542.10(a). These alternatives, according to the Supreme Court, allow inmates to stop "allegedly unconstitutional actions and policies" and to bring those ongoing ones "to the attention of the [Bureau]." *Malesko*, 534 U.S. at 74. Nor are these options theoretical. Koprowski used them to help obtain an MRI in this case.

Taken together, these alternatives allow an injured inmate to receive money for the injury *and* order the officials to obey the Constitution, demonstrating that Congress paid "careful attention" to this precise injury. *Schweiker*, 487 U.S. at 423. They also offer injured inmates extensive review procedures, which further "safeguard[]" their rights. *Id.* at 425.

*Special factors*. That brings me to the second inquiry: whether "special factors" counsel against implying a constitutional right of action. Even if the Act's regime and the Bureau's administrative mechanisms somehow do not constitute alternative remedies, "special factors" counsel against applying *Bivens*. This inquiry "relate[s] not to the merits of the particular remedy, but to the question of who should decide whether such a remedy should be provided." *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 208 (D.C. Cir. 1985) (Scalia, J.) (quotation omitted). In addressing this consideration, courts "weigh[] reasons for and against the creation of a new cause of action, the way common law judges have always done." *Wilkie*, 551 U.S. at 554. In the workers' compensation context—involving "a host of considerations that must be weighed and appraised," *Bush v. Lucas*, 462 U.S. 367, 380 (1983) (quotation omitted)—Congress is better suited than the courts to craft and manage the remedies for an inmate's work-related injuries.

Congress weighed the competing policy concerns, and it chose to establish a quid pro quo system as an exclusive substitute for tort relief. It substituted no-fault recovery in exchange for no private rights of action, *Bivens* included. Especially in this prison workers' compensation statute, where Congress accounted for "the special need of [this] class of prisoners" and the "differing circumstances of prisoners and nonprisoners," *Demko*, 385 U.S. at 152–53, we should respect Congress's decision. Even if inadequate in Koprowski's eyes (or for that matter judicial eyes), the federally prescribed remedial system indicates that Congress made a judgment about the type of relief it wants inmates injured on the job to recover. It's relief under the workers' compensation regime and the Bureau's remedial mechanisms, not relief under *Bivens*.

B.

Koprowski's *Bivens* claim fails for a related but independent reason. "[C]ommon law or statutory immunities" may, and indeed frequently do, "bar[]" *Bivens* actions. *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 319 (D.C. Cir. 2012).

*Hui v. Castaneda*, 559 U.S. 799 (2010), shows why.  Some federal Public Health Service officials allegedly violated a plaintiff's Eighth Amendment rights, as here, while he was in federal custody, as here.  *Id.* at 802–03.  To defend against the plaintiff's *Bivens*/*Carlson* claim, the federal officials argued that a statute that made the remedy against the United States exclusive precluded the *Bivens* claim.  *See* 42 U.S.C. § 233(a).  The Court agreed.  It did not address whether an implied cause of action under *Bivens*/*Carlson* existed for that type of Eighth Amendment violation.  *Hui*, 559 U.S. at 807–08 & n.6.  It instead held that, even if one existed, the exclusivity provision in the statute immunized the federal officials from any potential *Bivens* cause of action.  *Id.* at 805–08.

There's no escaping *Hui*'s lesson or its application to Koprowski.  A statute that provides an exclusive remedy against some entity other than the federal officials immunizes them from *Bivens* liability, even when a constitutional implied right of action otherwise exists.  And the Inmate Accident Compensation Act provides just that kind of remedy.  The Supreme Court already has explained that the Act is "the exclusive remedy to protect . . . injured federal prisoners" for work-related injuries.  *Demko*, 385 U.S. at 152.  The Act's regulations, no surprise, say the same thing.  They describe the Act as the "exclusive remedy in the case of [an inmate's] work-related injury."  28 C.F.R. § 301.319.  And exclusivity is of course a critical feature—perhaps the defining feature—of all workers' compensation systems.  The point is to create a trade-off, where inmates get guaranteed (no-fault) coverage, and the government gets freedom from further liability.  The Act thus immunizes the prison officials from lawsuits relating to the same work-related injuries no less than the Act in *Hui*.  *See Hui*, 559 U.S. at 805–06.

Other workers' compensation regimes, and the principles that undergird them, confirm this conclusion.  When workers' compensation statutes are "exclusive," as they usually are, that means they grant "immunity" from lawsuits relating to work-related injuries.  *See, e.g.*, *WMATA v. Johnson*, 467 U.S. 925, 932–33 (1984).  They need not use the word "immunity" to have an immunizing effect.  When exclusive, they "grant [] immunity" from "tort actions that might yield damages many times higher than awards payable under workers' compensation schedules."  *Id.*

at 932; *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006); *see Hui*, 559 U.S. at 805–06.

Nothing in this workers' compensation statute makes any exceptions for *Bivens* actions. Some statutes, by contrast, do just that, say by carving out actions "brought for a violation of the Constitution of the United States." *E.g.*, 28 U.S.C. § 2679(b)(2)(A). But this one doesn't do anything of the sort. "[W]ithout specific legislation to that effect," we shouldn't create "exceptions to [the] system" ourselves. *Johansen v. United States*, 343 U.S. 427, 441 (1952); *see Demko*, 385 U.S. at 151. The "general rule [of] exclusivity" thus applies, *id.*, providing an independent ground for rejecting this *Bivens* claim.

## II.

Koprowski's arguments on the other side of the ledger come up short.

*Carlson v. Green?* He puts considerable weight on the Court's 1980 *Carlson* decision—more, it turns out, than it can bear. *Carlson* held that an inmate's estate could bring a *Bivens* action against prison officials under the Eighth Amendment. 446 U.S. at 16 & n.1, 19. But it did not address whether an "exclusive" statute provided the defendants with immunity, making it "inapposite" to cases like this one. *Hui*, 559 U.S. at 807–08. Nor did it establish a categorical rule that *Bivens* applies to all Eighth Amendment claims, *e.g.*, *Minneci*, 132 S. Ct. at 623 (rejecting *Bivens* claim for an Eighth Amendment violation), or have anything to do with the special context of the prison workers' compensation system, meaning it is not dispositive of this case. *Cf. Meshal v. Higgenbotham*, 804 F.3d 417, 423 (D.C. Cir. 2015).

*Carlson*, it's true, contains what might seem like helpful dictum. An implied right of action, *Carlson* said, "may be defeated" by an express statute only when the "defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." 446 U.S. at 18–19. But both parties to this case agree that this dictum no longer orients the inquiry because the Court no longer considers it relevant. Since 1980, no Supreme Court majority opinion has relied on it. Now the Court looks only for some alternative system—congressional or not, explicit or

not, equally effective or not—that protects the plaintiff's interests. *See, e.g.*, *Minneci*, 132 S. Ct. at 623. That is precisely what this workers' compensation regime does.

For what it's worth, this *Bivens* claim couldn't succeed even with the *Carlson* dictum. *Carlson* held that the Federal Tort Claims Act did not substitute for *Bivens* relief, because Congress "made [] crystal clear that [it] views FTCA and *Bivens* as parallel, complementary causes of action." 446 U.S. at 20. Just the opposite is true here. Instead of saying that the Inmate Accident Compensation Act serves as a "parallel, complementary" regime to *Bivens*, *id.*, Congress treated the Act as "the exclusive remedy to protect" inmates injured on the job and as a "substitute for a system of [tort] recovery," *Demko*, 385 U.S. at 152–53; *see also* 28 C.F.R. § 301.319. Different congressional objectives lead to different results.

*Anomalies?* But this approach, Koprowski counters, creates "disparities" between inmates injured *off* the job (who can recover under *Bivens*, *see Carlson*) and those injured *on* it (who can't recover under *Bivens* and are left to recover only under the Act, *see Demko*). Appellant's Supp. Br. 18. True enough. But if Congress wants one group to recover only as provided by a workers' compensation statute and another group to recover under the common law, so be it: That's quintessentially a legislative call. "Whether it makes sense to impose asymmetrical liability . . . is a question for Congress, not us, to decide." *Malesko*, 534 U.S. at 72.

Many such anomalies, if anomalies they are, already exist in this area. Inmates injured in identical fashion (say, by prison officials' deliberate indifference) can recover under *Bivens* if housed at a federally operated prison but not if housed at a privately operated prison. *Minneci*, 132 S. Ct. at 620, 623–24. Both are federal inmates, both are housed in federal prison, but only one may get *Bivens* relief. Likewise, a person injured under the Due Process Clause can generally recover under *Bivens*, *see Davis*, 442 U.S. at 243–44, but not when the injury occurs by way of denial of social-security benefits, *Schweiker*, 487 U.S. at 424. These cases teach that the specific, alternative (congressional) remedy displaces the general (judicial) *Bivens* remedy, even if it means creating disparities among potential plaintiffs.

Koprowski is not the first person to raise this concern in the setting of this workers' compensation statute. *Demko* held that a federal prisoner injured on the job could not bring a lawsuit against the United States. 385 U.S. at 153. But this holding created tension with the Court's prior decision that allowed such lawsuits for inmates injured *off* the job. *United States v. Muniz*, 374 U.S. 150, 165–66 (1963). The *Demko* dissent protested that the majority's holding created an unjustified anomaly between inmates injured on the job and those injured off of it. *See* 385 U.S. at 154–56 (White, J., dissenting). No matter, the Court concluded. What mattered, the Court said, was that this plaintiff was covered by the Act's exclusive workers' compensation regime.

*Adequate remedy?* All that is well and good, Koprowski responds, but none of it changes the reality that he likely will recover less than he would have recovered under *Bivens*. To make matters worse, he doesn't have other rights that he does under *Bivens*, such as "a jury right and [a right to seek] punitive damages." Appellant's Supp. Br. 12.

But Koprowski's premise—that the Act's remedies are less generous than *Bivens*—is not necessarily so. As a general matter, *Bivens* is "more generous to plaintiffs in some respects" but "less generous in others." *Minneci*, 132 S. Ct. at 625. That's the nature of a workers' compensation system: readily available compensatory relief with no need to prove fault. This case illustrates the point. Suppose Koprowski can prove only negligence. He would not recover under *Bivens* (which requires deliberate indifference, *Malesko*, 534 U.S. at 73) but would recover under this no-fault Act. Or suppose he cannot produce any *evidence* of any misconduct. He would not survive summary judgment on a *Bivens* claim but would recover under the Act.

Even if the Act will be more restrictive than *Bivens* in *some* settings, Koprowski's conclusion does not follow. Alternative remedies can be "less generous" than *Bivens* and still exclude it—"say, by capping damages," "forbidding recovery for emotional suffering," or "imposing procedural obstacles" on the plaintiff. *Minneci*, 132 S. Ct. at 625. They need not compensate directly for constitutional injuries. *Schweiker*, 487 U.S. at 427–28. Some injuries can even "go unredressed." *Malesko*, 534 U.S. at 69. Koprowski seems to think that the only alternative remedy that would satisfy this inquiry is *Bivens* itself or something like § 1983. But the key implication of an *alternative* remedial scheme is that the pros and cons of that regime

suffice from Congress's perspective, not necessarily the litigant's perspective. And from that perspective, Koprowski has an adequate "avenue for some redress" for the type of injury he suffered. *Id.*; *see* 28 C.F.R. § 301.301(b).

*Demko* confirms this conclusion. The Court noted that, to the extent the Act's remedies were less generous than tort relief, that decision was *intentional*; it reflected a conscious choice by Congress to account for the "differing circumstances of prisoners and nonprisoners" and "the special need of [this] class of prisoners." *Demko*, 385 U.S. at 152–53. Any perceived inadequacy of the Act's remedies did not mean the judiciary needed to step in and allow a separate remedy. *See id.* at 153. It meant that courts must enforce the Act as written. Otherwise, even the existence of § 1983 claims would not prevent implied rights of action against state officials in some settings, namely if the claimant could show that an implied right of action directly under the Constitution would provide more relief than a § 1983 action does.

*Deterrence?* But is this alternative system adequate to deter individual officials' constitutional violations? Koprowski says no. The Act provides relief from the United States, he says, which will do little to deter individual officials.

The problem with this distinction is that the Supreme Court has already rejected it. On several occasions, the Court has held that a *Bivens* action was precluded by remedies that made "no provision for . . . money damages against officials responsible for unconstitutional conduct." *Schweiker*, 487 U.S. at 424; *see, e.g.*, *Bush*, 462 U.S. at 388. When Congress gives "meaningful remedies against the United States," the Court instructs, the *Bivens* remedy has no role to play. *E.g.*, *Schweiker*, 487 U.S. at 422 (quotation omitted).

Koprowski's existing remedies at any rate will deter individual officials in several ways. For one, the officials' unconstitutional conduct can be brought to light during the remedial proceedings—first before an administrator, 28 C.F.R. § 301.305, then before a committee, *id.* § 301.306(b), then before the corporation's Chief Operating Officer, *id.* § 301.313, then before the courts, *see* 5 U.S.C. §§ 701–706. For another, the unconstitutional conduct can be addressed through the "remedial mechanisms established by the [Bureau]." *Malesko*, 534 U.S. at 74; *see* 28 C.F.R. § 542.10(a). And for still another, the conduct can be laid bare and stopped by an *Ex*

*parte Young* action against the officials. *See Malesko*, 534 U.S. at 74. If an official isn't deterred by (1) administrative hearings about his conduct, (2) his bosses learning of it, (3) a lawsuit addressing it, and (4) a court ordering it to stop, it's hard to believe that a money-damages lawsuit, complete with defenses of qualified immunity and indemnity, will do much more in the way of deterrence.

*Exclusivity exceptions?* Koprowski suggests that some workers' compensation statutes are not exclusive, as they allow certain claims against certain people. True enough. *See, e.g.*, Mich. Comp. Laws § 418.131(1) (intentional tort exception). But he never contends that this Act contains any such exception. Nor could he. The Act is "the exclusive remedy to protect" inmates injured on the job. *Demko*, 385 U.S. at 152. It is not our role to create "exceptions to that [exclusive] system without specific legislation to that effect." *Id.* at 151 (quotation omitted).

*Other Circuits?* Three other circuits, I must acknowledge, have come out the other way. *See Bagola v. Kindt*, 39 F.3d 779, 780 (7th Cir. 1994); *Vaccaro v. Dobre*, 81 F.3d 854, 857 (9th Cir. 1996); *Smith v. United States*, 561 F.3d 1090, 1100–03 (10th Cir. 2009). But each one follows outdated reasoning. The Seventh Circuit's 1997 decision relied on the *Carlson* dictum, which liberally (and presumptively) extended *Bivens*, *see, e.g.*, *Bagola v. Kindt*, 131 F.3d 632, 637–40 (7th Cir. 1997), and which the parties agree no longer applies. The Ninth and Tenth Circuits just adopted the Seventh Circuit's "reasoning . . . as [their] own." *Smith*, 561 F.3d at 1103; *see Vaccaro*, 81 F.3d at 857.

The *Carlson* framework has been abrogated by cases like *Malesko*, *Wilkie*, and *Minneci*. For example, *Minneci*, decided after all three of these circuit court cases, explains that *Wilkie*'s "approach," not *Carlson*'s, governs the *Bivens* analysis. 132 S. Ct. at 623, 625. Indeed, the Seventh Circuit, which gave us the first opinion on this issue, has since recognized as much, *see Vance v. Rumsfeld*, 701 F.3d 193, 198–99 (7th Cir. 2012) (en banc). If there is a material division in the courts, it's between the framework used by these three circuits and the framework used by the Supreme Court today.

The different frame of reference explains each of these outcomes. One says, for instance, that inmates must be able to recover under *Bivens* or else they have no remedy against the

individual officials. But, as explained, that matters not under the updated framework. With the inverted frame of reference, these circuits also see the Act's no-fault scheme as a reason to apply *Bivens*—to place blame on certain wrongdoers. But again, the individual officials can be deterred in other ways. And if anything, with the proper frame of reference, the no-fault scheme cuts the other way. It shows just what Congress is willing to give up in this quid pro quo: No-fault compensation in exchange for no tort liability.

Not one of these cases, moreover, applies *Hui*. And for good reason: The Court decided *Hui after* each of these cases. For my part, I do not see how one can grant relief to Koprowski without slighting *Hui*.

Nor does Congress's purported "acquiescence" in these decisions tell us anything. *Supra* at 6. "We do not expect Congress to make an affirmative move every time a lower court indulges in an erroneous interpretation." *Jones v. Liberty Glass Co.*, 332 U.S. 524, 534 (1947). But if its acquiescence means something, surely Congress has acquiesced more in *Demko* and in the unbroken, thirty-six-year line of Supreme Court precedent limiting implied rights of action than it has in three circuit court cases going against the grain.

The majority seeing things differently, I respectfully dissent.