**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**February 4, 2026**

———————————————————

**Christopher M. Wolpert**
**Clerk of Court**

KENDRICK SIMPSON,

　　Plaintiff - Appellant,

v.

CHRISTE QUICK, in her official capacity
as Warden of the Oklahoma State
Penitentiary; JUSTIN FARRIS, in his
official capacity as interim Executive
Director of the Oklahoma Department of
Corrections; GENTNER DRUMMOND, in
his official capacity as Attorney General of
Oklahoma,

　　Defendants - Appellees.

No. 26-6008
(D.C. No. 5:25-CV-01221-D)
(W.D. Okla.)

———————————————————

### ORDER AND JUDGMENT[*]

———————————————————

Before **HOLMES**, Chief Judge, **McHUGH**, and **EID**, Circuit Judges.

———————————————————

Plaintiff Kendrick Simpson was sentenced to death for a murder he committed in

the State of Oklahoma, and his execution date is February 12, 2026.  He unsuccessfully

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of this
appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may
be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

sought to challenge Oklahoma's method-of-execution statute in the Oklahoma Court of Criminal Appeals (OCCA), which rejected his claim on ripeness grounds. He then filed an action under 28 U.S.C. § 1983 in federal district court, contending that the state process by which his claim was declared unripe violated his constitutional rights to due process, judicial access, and equal protection.

The district court dismissed the action because it lacked jurisdiction to hear Mr. Simpson's claims. He has appealed and moves this court to enjoin his execution pending appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's ruling. We deny as moot Mr. Simpson's motion to enjoin his execution pending appeal.

## I. Background

Mr. Simpson is one of three death row inmates in Oklahoma ("the *Underwood* petitioners") who filed (1) an application to assume original jurisdiction in the Oklahoma Supreme Court, and (2) a petition for declaratory and injunctive relief or writ of prohibition. They sought relief from Oklahoma's method-of-execution statute, Okla. Stat. tit. 22, § 1014, which they claimed violated Oklahoma's non-delegation doctrine.

The OCCA denied relief. *Underwood v. Harpe*, No. PR-2024-637, slip op. at 3 (Okla. Crim. App. Sept. 17, 2024). The statute provides that lethal injection is the preferred method of execution, but that if that method is held unconstitutional or is otherwise unavailable, then other methods may be used. The OCCA therefore held that "[u]nless and until lethal injection is held unconstitutional by a court or is otherwise

2

unavailable, there has been no harm to any of [the *Underwood* petitioners] and their claim thus fails the basic test of ripeness." *Id.*

On October 16, 2025, Mr. Simpson filed a § 1983 action in federal district court. He alleged that Oklahoma's state process violates his constitutional rights. The named defendants are the Oklahoma Attorney General, the Executive Director of the Oklahoma Department of Corrections, and the Warden of the Oklahoma State Penitentiary.[1] The defendants moved to dismiss the action, based in part on the *Rooker-Feldman* doctrine[2] and Eleventh Amendment immunity.

The district court granted the defendants' motion to dismiss in a seven-page order issued on December 19, 2025. It held the lawsuit was barred by the *Rooker-Feldman* doctrine because "[p]roviding the relief Plaintiff requests requires wading into the facts and legal analysis performed by the OCCA to determine if the OCCA reached an improper result as to ripeness in Plaintiff's case based on a faulty application of the law." R. at 122. It also held that his claims were barred by the Eleventh Amendment. Mr. Simpson then asked the district court to enjoin his execution pending his appeal. The district court denied the motion for injunction on January 8, 2026. Mr. Simpson filed this appeal the next day and his motion to enjoin his execution a week later.

---

[1] This is the location of Mr. Simpson's impending execution.

[2] The doctrine is named after the two Supreme Court decisions from which it is derived: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

3

## II. Discussion

Mr. Simpson contends the district court applied the wrong standard for determining whether it had subject-matter jurisdiction, and that it erred in concluding his claims are barred by the *Rooker-Feldman* doctrine and Eleventh Amendment immunity. We address each contention in turn.

### A. Rule 12(b)(1) standard

Mr. Simpson first argues the district court applied the wrong standard for determining whether it has subject-matter jurisdiction. The district court, citing *United States v. Hopson*, 150 F.4th 1290, 1298 (10th Cir. 2025), stated that "[i]t is presumed" a lawsuit lies outside the court's limited jurisdiction and that the plaintiff has the burden of establishing the contrary. R. at 120–21. Mr. Simpson contends that the presumption is inapplicable to his case because the district court had statutory authority to hear his constitutional claims under § 1983, and the district court erroneously dismissed his case based on that presumption.

Mr. Simpson is incorrect in asserting that the presumption formed the basis of the district court's dismissal. Rather, the district court's determination that his claims were jurisdictionally barred was based on its examination of the allegations of the complaint, which the district court correctly accepted as true. *See Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2007) ("A facial attack on the complaint's allegations regarding subject matter jurisdiction . . . requires the court to accept the allegations as true."). As discussed below, the allegations of the complaint, accepted as true, establish that the

4

"state process" Mr. Simpson purports to challenge is, in fact, the OCCA's ripeness holding, which the district court is without jurisdiction to review.

### B. *Rooker-Feldman*

The *Rooker-Feldman* doctrine recognizes that only the Supreme Court "is vested, under 28 U.S.C. § 1257, with jurisdiction over appeals from final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). Thus, a plaintiff cannot ask a federal district court to void a state-court judgment, because that "would be a usurpation of the authority of the Supreme Court." *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1139 (10th Cir. 2006). The doctrine bars "cases [1] brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). We review the application of the doctrine de novo. *Miller v. Deutsche Bank Nat'l Trust Co.*, 666 F.3d 1255, 1260 (10th Cir. 2012).

There is no question that Mr. Simpson is a state-court loser, within the meaning of *Exxon-Mobil*, and that the OCCA issued its decision before he filed his § 1983 action. Thus, the remaining issues are whether Mr. Simpson's § 1983 lawsuit "complain[s] of injuries caused by" the OCCA's decision and "invit[es] district court review and rejection" of that decision. In making these determinations, courts look to the allegations of the underlying federal complaint. *See, e.g., Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 517 (10th Cir. 2023) (examining allegations of complaint in addressing whether plaintiff's injury was caused by state-court judgment).

5

Mr. Simpson's alleged injury appears to be that while "State law gave [him] the right to challenge the statute . . . the procedural process rendered that right meaningless." R. at 9 (Complaint), ¶ 9; *see also id.* at 12, ¶ 19 (alleging he was denied "a meaningful opportunity to challenge the lawfulness of his execution"). The complaint makes clear that "the procedural process" that caused Mr. Simpson's injury is, in fact, the OCCA's ruling in *Underwood*. This is made plain by his allegation that "[w]ithholding adjudication because of the ripeness determination was tremendously harmful to Mr. Simpson and the other plaintiffs." *Id.* at 27, ¶ 61. In short, the source of Mr. Simpson's injury is clearly the OCCA's holding that the *Underwood* petitioners' claim "fail[ed] the basic test of ripeness." *Underwood*, slip op. at 3.

The allegations of the complaint also establish that Mr. Simpson's § 1983 lawsuit "invit[es] district court review and rejection" of the OCCA's holding, *Exxon-Mobil,* 544 U.S. at 284. The complaint requests the following relief:

> A. Declare that Oklahoma's procedural process violated his rights to due process, judicial access, and equal protection.
>
> B. Enjoin the prison from executing Mr. Simpson until a lawful process is provided in which he can meaningfully challenge the lawfulness of Oklahoma's execution statute.

R. at 43. Mr. Simpson fails to explain how the federal district court could provide the relief he requests—particularly an injunction that would remain in force until the OCCA provides a process "in which he can meaningfully challenge the lawfulness of Oklahoma's execution statute"—without reversing or otherwise invalidating the OCCA's ripeness holding.

6

In short, the allegations of Mr. Simpson's complaint illustrate that his § 1983 lawsuit fits within *Rooker-Feldman*'s bar against district court review of state-court decisions. In *Bolden*, we explained that "*Rooker-Feldman* does not bar federal-court claims that would be identical even had there been no state-court judgment; that is, claims that do not rest on any allegation concerning the state-court proceedings or judgment." 441 F.3d at 1145. The allegations of Mr. Simpson's complaint illustrate that his claims rest so fully on the OCCA's ripeness holding that his § 1983 claims simply would not exist absent that holding. As Mr. Simpson himself declares in the opening brief: "Simpson's nondelegation challenge in state court gave rise to his federal action." Op. Br. at 3 (boldface omitted). Or, as the district court cogently observed, "sans allegations regarding the OCCA's ripeness ruling, [Mr. Simpson's] complaint is devoid of any specific state action for this Court's review." R. at 123.

In support of his argument that his lawsuit is not barred by *Rooker-Feldman*, Mr. Simpson cites three Supreme Court decisions: *Gutierrez v. Saenz*, 606 U.S. 305 (2025), *Reed v. Goertz*, 598 U.S. 230 (2023), and *Skinner v. Switzer*, 562 U.S. 521 (2011). In each of those decisions, state prisoners had sought DNA testing of evidence under Texas's postconviction DNA statute, and the state courts had rejected their requests. *Gutierrez*, 606 U.S. at 310-12; *Reed*, 598 U.S. at 233; *Skinner*, 562 U.S. at 528. And in each case, the prisoners filed federal constitutional challenges to Texas's postconviction DNA statute. None of those challenges were held to be barred by *Rooker-Feldman*. Mr. Simpson argues his case is no different. The decisions, however, are distinguishable.

7

In *Skinner*, the Court explained that the plaintiff had not "challenge[d] the adverse [state-court] decisions themselves; instead, he targets as unconstitutional the Texas statute they authoritatively construed."  562 U.S. at 532.  The Court further explained that this distinction is in keeping with the Supreme Court's decision in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).[3]  *See Skinner*, 562 U.S. at 532–533. The Court in *Reed* reiterated the same distinction.  598 U.S. at 235 ("Here, as in *Skinner*, Reed does 'not challenge the adverse' state-court decisions themselves, but rather 'targets as unconstitutional the Texas statute they authoritatively construed.'" (quoting *Skinner*, 562 U.S. at 532)).

Mr. Simpson's § 1983 claims, in contrast to the *Skinner* line of decisions, do not challenge the constitutionality of the execution statute as construed by the OCCA; rather, as the allegations of his complaint illustrate, he is challenging the OCCA's ripeness holding and asks the federal district court to reverse it.  In *Rhoades v. Martinez*, No. 21-70007, 2021 WL 4434711 (5th Cir. 2021), the Fifth Circuit addressed a similar circumstance.  The plaintiff, a death row inmate, filed a motion in Texas state court invoking a state-law procedure for obtaining juror materials.  *Id.* at *2.  The state court

---

[3] In *Feldman*, a group of bar applicants petitioned the D.C. Court of Appeals (the equivalent of a state's highest court, *see* 28 U.S.C. § 1257(b)) to waive a court rule requiring them to have graduated from an accredited law school.  *Id.* at 466, 471.  The court rejected the request, and the plaintiffs then filed suit in federal district court.  *See id.* at 468–70, 472–73.  The district court dismissed the lawsuit under *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).  The *Feldman* Court reversed in part, holding that while the plaintiffs could not obtain review of the decision of the D.C. Court of Appeals, *id.* at 476, they were not barred from challenging the constitutionality of the rule itself, *see id.* at 482–86.

denied the motion on the ground that it lacked jurisdiction over the inmate's request. The plaintiff then filed a § 1983 action contending the state court's denial of his motion violated his right to due process. The Fifth Circuit held that *Rooker-Feldman* barred the plaintiff's claim:

> [The plaintiff] cannot evade [*Rooker-Feldman*] by asserting claims framed as original claims for relief, here recasting [the state court's] denial of relief as a denial of constitutionally secured due process. This is word play: a declination to rule for want of jurisdiction cannot be reframed as a denial of due process rooted in the state law rule. Stripped of its able advocate's clothing, [the plaintiff] asked the district court to determine that [the state court] incorrectly applied state law.

*Id.* (ellipsis, footnotes, and internal quotation marks omitted). The court further held that *Skinner* was distinguishable because while the plaintiff in *Skinner* challenged the constitutionality of a district attorney's refusal to order DNA testing, Rhoades "challenged a judicial ruling." *Id.* The same is true in Mr. Simpson's case—he challenges the OCCA's ruling, and his attempts to characterize the OCCA's ripeness determination as a "state process" do not bring his claims within the ambit of the *Skinner* line of cases.

### C. Eleventh Amendment immunity

"States enjoy sovereign immunity from suit under the Eleventh Amendment . . . [b]ut [such] immunity is not absolute." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012). Under *Ex parte Young*, 209 U.S. 123 (1908), "a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Muscogee (Creek) Nation*, 669 F.3d at 1166.

9

The district court held that the *Ex parte Young* exception did not apply and that it therefore did not have jurisdiction over Mr. Simpson's claims. The district court noted that for the exception to apply, the defendant state officials "'must have some connection with the enforcement of the [state law], or else [the lawsuit] is merely making [the officer] a party as a representative of the state, and thereby attempting to make the state a party.'" R. at 124 (quoting *Ex parte Young*, 209 U.S. at 157). Because the named defendants have no connection to the OCCA's ripeness decision, which is the state action Mr. Simpson challenges, the district court held the exception did not apply.

Mr. Simpson insists that his alleged injury arises from the defendants' actions because they plan to execute him despite his inability to challenge the validity of the execution statute. But he also admits that "[t]he constitutionality of lethal injection is settled law" and there is "no indication that lethal injection in Oklahoma is or will become unavailable." Op. Br. at 14–15. Thus, Mr. Simpson's harm derives not from the defendants' actions, but from the OCCA's holding in *Underwood*.

In short, the district court correctly held that Mr. Simpson's claims are barred by Eleventh Amendment immunity.

### III.  Conclusion

For the foregoing reasons, we affirm the district court's conclusion that it lacked jurisdiction over Mr. Simpson's claims.  We deny as moot Mr. Simpson's motion to enjoin his execution pending appeal.

Entered for the Court

Per Curiam